Filed April 8, 1890.

123  177
127  543
123  177
133  117

---

### No. 14,141.

### The Indiana Insurance Company *v.* Hartwell.

Insurance.—*Brokers.*—*Risk Placed by.*—*Agents of Company.*—An application for a line of fire insurance was made to an insurance broker in Chicago. He in turn applied to a firm of insurance brokers also in Chicago to place a portion of the insurance, no particular company or companies being designated. The last-named firm placed the insurance in part, and then forwarded to the agent of the defendant company, located at Indianapolis, a copy of the description of the risk they had received, with a blank form of application for insurance. No particular company was mentioned in which said insurance was desired. The defendant company, through its agent at Indianapolis, who was also the secretary of the company, wrote up the policy and forwarded it to the firm of insurance brokers, who delivered it to the broker from whom they had received the application, and he delivered it to the assured. The firm of insurance brokers in this instance, as they had done a number of times before, with the knowledge and consent of the defendant company, retained a portion of the premium received for their services and remitted the balance to the agent of the defendant company at Indianapolis.

The Indiana Insurance Company v. Hartwell.

*Held,* that thè firm of insurance brokers in Chicago were the agents of the defendant company, and not of the assured.

*Held,* also, that any knowledge they had as to the risk was binding upon the defendant company, though not communicated to it.

SAME.—*Persons Employed by Agents.—Acts of.—How far Binding on Company. —Insurance Brokers.—*Insurance companies are not only responsible for the acts of their agents, within the scope of their agency, but also for the acts of other persons employed by its agents when the company knows, or ought to have known, that other persons would be employed by and to act for its agents. Insurance brokers are the agents of insurance companies for the purpose of delivering policies and collecting premiums.

SAME.—*Risk Procured by Broker.—Acceptance of by Company.—*An insurance company is just as much bound by the acts of an insurance broker who procures a risk which is adopted and accepted by the company as it is by the acts of a commissioned agent. In either case what is done is the authorized act of the company, and for the services rendered the company responds.

SAME.—*Occupancy of Building.—Non-Requirement of Statement from Assured. —What He May Assume.—*Where the assured is not called upon to make any statement or representation as to the occupancy of the building insured, he has the right to assume that the insurance company will procure such information as it desires elsewhere, and when the policy is issued that it has done so, and is satisfied therewith, and has written the policy in accordance with the information obtained.

SAME.—*Use of Building.—Absence of Statement by Assured—Knowledge of Use by Broker.—Misdescription of Risk in Policy.—Company Bound Thereby.—*Where the assured makes no statement or concealment as to the purpose for which the building insured is used, but the insurance brokers, through whom the insurance is effected, have full knowledge of the character of the occupancy, having personally inspected the premises, though not for the purpose of placing the particular insurance, and with such knowledge misdescribe the risk in that particular, and such misdescription is incorporated in the policy of insurance, the defendant company can not avoid the policy on that ground. Such knowledge on the part of the insurance brokers is notice to the defendant company though not communicated to it.

From the Marion Superior Court.

*V. Carter,* for appellant.

*A. W. Hatch,* for appellee.

BERKSHIRE, J.—The appellee sued the appellant on a fire insurance policy.

The appellant answered in three paragraphs, and the appellee replied in two paragraphs, the second paragraph being the general denial.

The third paragraph of answer cut no figure in the court below, nor is it of any importance to the questions involved in this appeal.

The first paragraph of answer is, in substance, that, on the 5th day of February, 1881, the appellant issued the policy sued upon; that the property therein described was partially destroyed by fire on the 5th day of August, 1881; that, on the 16th day of August, 1881, the appellee made proof of loss, in which he claimed the sum of $469.09; but the appellant claims that the appellee ought not to maintain his said action, because by the terms of said policy the property insured and the building in which the same was situated was described in the written part of said policy in the words and figures following, to wit: " On stock manufactured and unmanufactured, and in process of manufacture, and on all materials and supplies for the same, all contained in the brick building situate Nos. 82, 84 and 86 Fulton street, Chicago, Illinois, and occupied as a sash, door and blind factory," and which description constituted a warranty that said building was occupied as a sash, door and blind factory, and for no other purpose; that there has been a breach of said warranty in this; that at the time said policy issued, and at the time of said fire, said building was not occupied as a sash, door and blind factory only, but was occupied in its several parts by other persons than the appellee, and for other purposes than a sash, door and blind factory.

The answer then stated in detail who else occupied the building, and the purposes for which occupied.

The second paragraph of answer may be abbreviated as follows: That the appellee ought not to recover in this action because by the terms of the policy it is covenanted and agreed that any application, survey or description referred to in said policy is true; that no fact material to the risk or relating to

its condition, situation or occupancy has been concealed, and that said policy should become void and of no effect on failure or neglect of the assured to comply with its terms, conditions or covenants; that said policy contained the further condition that "Any such persons as shall hold the commission of this company shall be considered as its agents in any transaction relating to this insurance, or any removal thereof, or the payment of the premium to the company;" that the said policy was issued under the circumstances and representations following, and not otherwise; that in the month of February, 1881, one S. S. Nutting, an entire stranger to the appellant or any of its officers, and who was an insurance broker, doing business in Chicago, Illinois, was authorized by the appellee to procure a line of insurance on the property covered by the said policy; that Nutting applied to the firm of Mickel & Gardner, insurance agents and brokers, also doing business in said city of Chicago, to place a portion of said insurance without designating any particular company in which such insurance should be written; that at the time of such application said Nutting furnished to Mickel & Gardner a written description of the said risk in the words following: "On stock manufactured and unmanufactured, and in process of manufacture, and on all materials and supplies for the same, all situated Nos. 82, 84 and 86 Fulton street, Chicago, Ills., and occupied as a sash, door and blind factory; other insurance permitted; permission to use kerosene oil;" that said Mickel & Gardner wrote a portion of said insurance in a company represented by them as agents, but not being able to place the full amount of such insurance in companies of which they were the commissioned agents, they copied the same description so furnished by Nutting, with a blank form of application for insurance, as follows: "No. 172 La Salle street, Chicago, Ill. Application for insurance against loss or damage by fire by E. A. Hartwell; term one year from February 5th, 1881. On stock manufactured and unmanufactured, and in process

of manufacture, and on all materials and supplies for the same; all situated Nos. 82, 84 and 86 Fulton street, Chicago, Ills., and occupied as a sash, door and blind factory; other insurance permitted; permission to use kerosene for lights," and forwarded the said application by mail to Martin V. McGilliard, an insurance agent for numerous companies, an insurance broker, and secretary of the appellant company, and whose place of business, as well as the home office of the appellant, was Indianapolis, Indiana; that neither in nor accompanying said application was there any particular company designated in which said insurance was desired; that upon receipt of said application said McGilliard placed said insurance in the appellant company, and wrote the policy, incorporating in the written portion thereof the description as furnished by Nutting and forwarded by Mickel & Gardner, and then forwarded the policy to Mickel & Gardner at Chicago; that they delivered the said policy to said Nutting, who delivered the same to the appellee; that within thirty days thereafter the appellee paid the premium to Nutting, and he to Mickel & Gardner; that they retained $17\frac{1}{2}$ per cent. of the said premium, and remitted the residue to McGilliard; that prior to the transaction in question said Mickel & Gardner had on several occasions sent similar applications to said McGilliard to place for them, and had been placed by him in other companies, and in each case a broker's commission of $17\frac{1}{2}$ per cent. was retained by them without objection on the part of McGilliard. The appellant further states that Mickel & Gardner were not its commissioned agents, and had no authority to accept a risk or to write a policy for it, nor did they have any other connection with the appellant than as stated above; that by the said written description furnished as stated, and incorporated by McGilliard in the said policy, the appellee represented and agreed with the appellant that the said building Nos. 82, 84 and 86 Fulton street, Chicago, Ill., was occupied as a sash, door, and blind factory, and for no other purpose; that appellant re-

lied on said representations, believed them to be true, and issued the policy; that said representations and warranty in said policy were false and untrue, as appellant then and there well knew, in this, that at the time said policy was issued, and at the time of said fire, said building Nos. 82, 84 and 86 Fulton street, Chicago, was not occupied only as a sash, door and blind factory.

The answer then goes on to state by whom and for what purposes the building was occupied, and that if the facts stated had been known to the appellant it would not have issued the policy.

It is then averred that at the time Nutting delivered said written description of said risk to Mickel & Gardner, he had full knowledge of all the facts, but did not communicate the same to them; that prior thereto, Mickel & Gardner had inspected said building as the agent of other companies than the appellant, and at the time they received and forwarded said application to said McGilliard, they had full knowledge of the occupancy of said building as aforesaid, but had never at any time inspected the same for the appellant; nor did they at any time inform the appellant of said occupancy other than as a sash, door and blind factory; that at the time said policy was issued neither the appellant nor any of its officers had any actual knowledge of such other occupancy, but the same was concealed from it as already stated.

The first paragraph of reply stated, in substance, the following facts: It is true there were other kinds of business carried on in the same premises, 82, 84 and 86 Fulton street, Chicago, but the appellant had full knowledge thereof when it issued the said policy; that the appellant had many times inspected said building, and was acquainted with the existence, situation and location of the dry kilns, etc., referred to in the answer, and with such knowledge accepted said premium, as set out in the complaint, and issued the policy.

The cause being at issue, was submitted to the court at special term for trial, and by request properly made, the

court returned a special finding of facts, together with its conclusions of law thereon.

The appellant excepted to the conclusions of law, and then filed a motion for a new trial, which the court overruled, and it reserved an exception. Judgment was then rendered for the appellee, and from the said judgment the appellant appealed to the general term.

In general term the judgment at special term was affirmed, and therefore this appeal.

We are of the opinion that the evidence fully supports the facts as found by the court at special term, and do not feel called upon to consider the action of the court in overruling the motion for a new trial.

The judgment must stand or fall upon the conclusions of law to be drawn from the facts found by the court.

The following is the special finding of the court, including its conclusions of law :

## "FINDING OF FACTS.

" The court having been requested by both plaintiff and defendant to make a special finding of the facts and its conclusions of law herein, finds the following to be the material facts :

" Prior to February 5th, 1881, the said defendant was, and ever since has been, a fire insurance company, organized under the laws of the State of Indiana, and having its principal office in the city of Indianapolis, Marion county, in said State, and at and prior to said time one Martin V. McGilliard was the secretary of said company.

"Said company did not have any agents, general or special, of any kind or for any purpose in the city of Chicago, State of Illinois, unless the facts hereinafter found are sufficient to show that the insurance agents and brokers hereinafter mentioned, as taking and forwarding applications from Chicago to the defendant, were the agents of said defendant.

" But said company received applications from Chicago

and issued fire insurance policies upon buildings in said city of Chicago.   Its mode of business in so taking applications and issuing policies was as hereinafter stated.

" Prior and subsequent to December 1st, 1880 (the date when defendant began to do a fire insurance business), there were in said city of Chicago divers firms of insurance agents and brokers, including a firm known as Mickel & Gardner, who made it a part of their business to get applications from persons desiring fire insurance, and if a general application was made to them for fire insurance, that is, an application by an applicant for so much insurance, without specifying any particular fire insurance company, they would endeavor to place the insurance in one or more of the companies with whom they corresponded, or would send the same to some other agent or broker to place in some company with which such agent or broker corresponded.   They then became known as correspondents of the companies, agents and brokers with whom they so corresponded.

" Prior to December 1st, 1880, said Mickel & Gardner had corresponded with said McGilliard, he then being an insurance agent and broker in Indianapolis ; and after said date they continued to correspond with him as a general insurance agent and broker, and also as secretary of the defendant herein.

" Said defendant, after December 1st, 1880, also had other correspondents in Chicago besides said Mickel & Gardner. Said Mickel & Gardner were not authorized by defendant to issue policies, nor had they any express authority, other than such, if any, as may be implied from the facts herein found, to solicit or receive applications, but in placing insurance for which a general application to them had been made. They sometimes forwarded an application to said McGilliard to place all or part of the insurance desired in said defendant company.   Said McGilliard would then refer such application to the defendant, and if it was approved by defendant, it would then issue and forward a policy to said Mickel

& Gardner, who would deliver it to the applicant. In such event the policy would recite the full payment to the defendant of the premiums, but said Mickel & Gardner would, with the approval of the defendant, retain seventeen and one-half (17½) per cent. of such premium for their commissions. If application was made to said Mickel & Gardner by some other insurance agent or broker, and they desired to place all or part of the insurance in the defendant company, the same course would be pursued as before stated, except that the policy would be delivered to the applicant by the agent or broker who received the application, he receiving his commission from Mickel & Gardner out of the seventeen and one-half (17½) per cent. of the premiums retained by them.

" Prior to the date of issuing the policy sued on, the defendant did not issue any policies on property in Chicago in any other way than in the manner herein stated.

" Prior to the issuing of such policy, one Nutting, an insurance agent and broker in Chicago, who had business dealings with said Mickel & Gardner, but who was unknown to the defendant, was solicited by the plaintiff, but without designating any particular company, to place for him a line of insurance upon the property described in the insurance policy sued on in this action, all of which was situate in a building known as Nos. 82, 84 and 86 Fulton street, Chicago, Illinois.

" Said building at the time of the making of the application hereinafter mentioned, and at the time when said building was burned, as hereinafter found, was occupied as follows: The plaintiff occupied a part of the basement and a part of the second story as a sash, door and blind factory. J. K. Russell & Co. occupied a part of the first story for an office, a box factory and for the storage of lumber. Thompkey & Co. occupied a part of the basement and first story for manufacturing picture frames, mouldings, wood carpentering, fencing and weather strips. Thompson & Bergen-

son occupied the south sixty (60) feet of the third floor for the manufacture of furniture. Frank Komp occupied part of the third floor for the manufacture of lounge frames, patents and patterns. On each floor there was a dry room or dry kiln for drying lumber, which was heated by exhaust steam.

"The business of the plaintiff, as aforesaid, was the most hazardous of all the trades carried on in said building; but each of the other trades made the risk more hazardous than it would have been if such trade had not been so carried on. The dry rooms or kilns did not make the building more liable to take fire, but made it extra-hazardous in this, that a fire once started in said building it would burn more rapidly and be more difficult to extinguish by reason of said dry room.

"Before said Nutting made out the application, hereinafter mentioned, he went through said building and knew just how and by whom it was occupied, and the existence and the location of said dry rooms, all of which was plainly visible to any one going through the said building, and the plaintiff did not conceal or attempt to conceal from said Nutting any fact concerning the occupation of said building, or the existence or the location of any of said dry rooms. Said Gardner of the firm of said Mickel & Gardner, as agent of insurance companies other than this defendant (but not as agent of said defendant), had gone through the said building several times before the date of such application, and knew that it was occupied by other firms of wood workers besides the said plaintiff, and that other kinds of business than that of said plaintiff were carried on therein, and of the existence of the said dry rooms or dry kilns therein.

"Thereupon, said Nutting made a general application to said Mickel & Gardner, who then made out a written application in the words and figures, following, viz.:

"'R. Mickel & Co., Underwriters, 172 La Salle Street, Chicago, Illinois:

The Indiana Insurance Company v. Hartwell.

" 'Application for insurance against loss or damage by fire by E. A. Hartwell.

" 'Amount. Per cent. Premium. Term. From. To.
$750 4½ $32.75 1 year Feb. 5, '81 Feb. 5, '82

" ' On stock manufactured, unmanufactured, and in process of manufacture, and on all materials and supplies for the same; all contained in the brick building situate Nos. 82, 84 and 86 Fulton street, Chicago, Illinois, and occupied as a sash, door and blind factory.  O. I. P.

" ' Permitted to use kerosene for lights.'

" On the back of said application was a pencil diagram, showing the location and surroundings of said building; but not how it was occupied, nor the existence or location of any dry-rooms.

" The plaintiff did not sign or see said application, and had no personal communication with said Mickel & Gardner, and did not authorize them or said Nutting to describe the property insured in the way in which it was described in said application ; nor did he know, until after this action had been commenced, that it had been so described in said application.

" Said Mickel & Gardner forwarded said application, with their approval, to said McGilliard, with a note endorsed thereon stating that it was intended for the defendant Company. McGilliard presented it to the said defendant, by whom it was approved, and the policy sued upon was thereupon issued and forwarded to the plaintiff through the same channels through which the application had been received.

" Neither said defendant nor said McGilliard had any knowledge or notice that said building was occupied or used other than as a sash, door, and blind factory, or by whom said building was occupied, or of the existence of any dry-rooms or kilns therein, unless the knowledge of said Nutting and said Gardner is upon the facts herein found to be imputed to them.

" The plaintiff paid the premium of thirty-three dollars

and seventy-five cents ($33.75) about March 1, 1881, to said Nutting, who paid the same to said Mickel & Gardner, less the commission retained by him under his arrangement with them, and they then forwarded the amount so received by them, less seventeen and one-half (17½) per cent. to said McGilliard, as the secretary of the defendant Company, who accounted for the same to this defendant, according to the mode of doing business hereinbefore found, including in his account the said amount retained by said Mickel & Gardner. ( *Vide* record, p. 32.)

" The defendant, before it issued the policy sued on, knew that said application had not been written nor signed, nor forwarded by the plaintiff, but that it had been written and forwarded by the said Mickel & Gardner, and knew also when the premium was paid that said Mickel & Gardner had retained seventeen and one-half (17½) per cent. of the said premium so paid, as aforesaid, as their commission.

" On August 5, 1881, while said policy was in force, and while plaintiff was still the owner thereof, and of the property so insured in and by the same, said building wherein said property was contained caught on fire in the portion occupied by said J. K. Russell & Co. and was burned, and said insured property was damaged by the fire to the extent of twenty-three hundred and ninety-seven and fifty-two hundredths dollars ($2,397.52). The total insurance thereon was thirty-eight hundred and thirty-three, and thirty-three hundredths dollars ($3,833.33), and the proportion of said loss chargeable to this defendant (if, upon the facts found, the defendant is liable) is four hundred and sixty-nine and and nine hundredths dollars ($469.09), with interest at the rate of six per cent. per annum, from October 2, 1881.

" Due proof of loss was made and forwarded to the defendant by the plaintiff on August 15, 1881, and more than sixty days before the commencement of this action.

" No part of said loss has been paid to the plaintiff by the defendant."

## " CONCLUSIONS OF LAW.

" Upon the foregoing facts the court states the following as conclusions of law, viz.:

"*First.* That the insurance brokers, Mickel & Gardner, mentioned in the foregoing finding of facts, are to be deemed agents of the defendant, in respect to the issuing of the policy sued on herein, and in the taking of the application upon which it was issued.

"*Second.* That the knowledge of said Mickel & Gardner as to the location, character and occupancy of the building in which the property insured was situated, and as to the existence and location of the dry-rooms or dry-kilns therein, is to be deemed as notice thereof to said defendant.

"*Third.* That upon the facts found there was no warranty by the plaintiff, express or implied, that said building was occupied only as a sash, door and blind factory.

"*Fourth.* That upon the facts found the plaintiff was not guilty of any concealment in not disclosing to the defendant how the said building was occupied, and the existence and the location of said dry-rooms or dry-kilns therein.

"*Fifth.* That if there was any such warranty, express or implied, or any such concealment, the defendant is estopped from setting up the same as a defence to this action.

"*Sixth.* That upon the foregoing facts the plaintiff is entitled to recover of and from the defendant the sum of four hundred and sixty-nine dollars and nine cents ($469.09), with interest thereon from October 2d, 1881, at the rate of six (6) per cent. per annum, making a total amount of six hundred and thirty-seven dollars and ninety-six cents ($637.96).

"DANIEL WAIT HOWE, *Judge.*"

It is contended by the appellant that the written portion of the policy copied in the answer as a quotation is a strict warranty, and that as the building was not occupied solely by the appellee, and not occupied solely as a factory for manufacturing sash, doors and blinds, the policy was ab-

solutely void from the beginning, and therefore the appellant is not liable in this action.

As the case may be, and should be, affirmed on other grounds, we do not feel called upon to pass upon the question to which we have just called attention.

The appellee called upon Nutting to place a line of insurance upon his said property, and through Nutting's agency the policy in suit was finally issued.

If Nutting had been the commissioned agent of the appellant, and the appellee had requested him to place the insurance, there would be no contention but that he in placing the insurance would have been the agent of the appellant, and not of the appellee, independent of any provision in the policy; and this would have been true whether he had authority to countersign, fill out and deliver policies, or whether, as is the practice with many companies, he only had authority to take applications, receive premiums, and forward the same to the general office of the company for approval, and upon which when approved the home office would issue the policies and forward to the agent for delivery.

In the one case, it is true, the authority of the agent is recognized in advance, while in the other it is not recognized until what has been done is accepted and adopted by the insurance company; but when accepted and approved by the company the agency is recognized from the beginning. This is a well-settled rule in the law of agency, and no good reason now occurs to us why it should not apply to insurance contracts the same as to other contracts.

But suppose it is conceded that Nutting was the agent of the appellee, he was at most but his agent for procuring the insurance. Let us suppose Nutting not to have been an insurance broker at the time the appellee called on him to place the insurance, and that Mickel & Gardner had placed the insurance in some one of the companies for which they were commissioned agents, it is clear they would not have been the agents of the appellee. In that

case, on the one side would have been Nutting representing the appellee, and on the other, Mickel & Gardner representing the insurance company. Or suppose, instead of going to Mickel & Gardner, Nutting, as the agent of the appellee, had gone directly to McGilliard, the secretary of the appellant company, and procured the insurance, we would then have had Nutting representing the appellee on the one side, and McGilliard, the secretary and a general officer of the appellant, representing it on the other ; thus bringing together the minds of the contracting parties as if the appellee had gone in person to the appellant.

We can not understand how it can make any difference as to the position of the parties because of the fact that Mickel & Gardner stand between Nutting and the appellant's secretary. They have no relation in any way with the appellee. He does not know them in the transaction, and pays them nothing for their services, and they have no claim on him in any way.

But under the transaction in question the appellee pays the premium that is required by the appellant, and receives his policy. How are the agents or parties who have figured in the transaction, and through whom it is closed up, paid for their services ? They are paid by the appellant. What for ? For the benefit which it has received from their services. The appellant received just twenty per cent. less for the risk than it would have received if the appellee had gone to it direct and obtained the policy ; but the appellee paid no more than if he had procured the policy direct from the appellant.

Upon principle, we can see no reason for drawing a distinction between an insurance broker, who procures a risk which is adopted and accepted by an insurance company, and a commissioned agent, who effects the insurance, so far as their relations to the company are concerned. In either case, what is done is the authorized act of the company, and for the services rendered the company responds.

Insurance companies are not only responsible for the acts of their agents, within the scope of their agency, but also for the acts of the agent's clerks, when the company knew, as it ought to have known, that other persons would be employed by and to act for the agents. Insurance brokers are the agents of insurance companies for the purpose of delivering policies and collecting premiums.

In *Duluth Nat'l Bank* v. *Knoxville Fire Ins. Co.*, 85 Tenn. 76 (4 Am. St. Rep. 744), the court said : "Not only is the insurer responsible for the acts of its agent, within the scope of his agency, but also for the acts of its agent's clerks, or any person to whom he delegates authority to discharge his functions for him. Of course the act must be done by some person authorized expressly, or impliedly by the agent, and under such circumstances that the insurer knew, or ought to have known, that other persons would be employed by and to act for the agent." See Wood Fire Ins., section 409.

In view of the fact that McGilliard was the principal secretary of the company, and one of its general officers, we are inclined to the opinion that the relations, as shown by the special finding, which existed between him and Mickel & Gardner, and the manner in which their applications were received, examined, and approved, bring them within the rule as above stated. See *Mutual Assurance Society* v. *Scottish Union, etc., Ins. Co.*, 84 Virginia, 116 (10 Am. St. Rep. 819) ; *Insurance Co.* v. *Wilkinson*, 13 Wal. 222.

In *McArthur* v. *Home Life Ass'n*, 73 Iowa, 336 (5 Am. St. Rep. 684), the court said : "Was Hair the defendant's agent? The court found that he claimed to be acting in that capacity, and that he forwarded the application upon which the policy issued to the plaintiff through Bailey & Co., and that Hair's name was indorsed upon such application as agent. The defendant knew when it accepted the application and issued the policy that Hair, claiming to act as its agent, had procured the application, and the defendant thereafter received from the assured all of the dues and as-

sessments due the company, according to the terms of the policy for the period of nearly three years. Having received and enjoyed all of the benefits of Hair's acts, the defendant can not be permitted to say he was not its agent." See *Bartholomew* v. *Merchants' Ins. Co.*, 25 Iowa, 507 (96 Am. Dec. 65, and note) ; *Wilson* v. *Minnesota Farmers', etc., Ins. Ass'n*, 36 Minn. 112 (1 Am. St. Rep. 659, and note) ; *Pickel* v. *Phenix Ins. Co.*, 119 Ind. 291.

We copy with approval the following from the opinion of Judge Howe, who spoke for the court below : " It seems to me the finding of facts shows that Mickel & Gardner were the agents of the defendant company. In determining this question I reject as wholly immaterial the provisions in the policy that ' only such persons as shall hold the commission of the company shall be considered as its agents,' and that ' any other person shall be deemed the agent of the assured.' Whether, upon a given state of facts, one is, or is not, to be deemed the agent of another, is a question of law, which the courts decide themselves, and they have invariably repudiated all attempts of insurance companies to bind them by such provisions." Wood Fire Ins. (2d ed.), section 409 ; *Indiana Ins. Co.* v. *Hartwell*, 100 Ind. 566 ; *Hermann* v. *Niagara Fire Ins. Co.*, 100 N. Y. 411 ; *Mutual Assurance Society* v. *Scottish Union, etc., Ins. Co.*, *supra.*

The special finding discloses the fact that the written part of the policy upon which the appellant rests its defence to the action was not furnished by the appellee, but was furnished by Nutting and Mickel & Gardner ; that the appellee had no knowledge thereof.

It further appears that Nutting and Mickel & Gardner likewise knew full well when the written statement was furnished from which the said written part of the policy was copied, the manner and character of the occupancy of said building, and, therefore, that the statement as furnished did not state the truth.

We think that the notice which they possessed, and especially Mickel & Gardner, was notice to the appellant, and, having issued the policy with such notice, that it thereby waived all right to take advantage of the untruthfulness of the said written part of said policy, and is estopped to assert the truth as to the occupancy of the said building.

As the appellee was not called upon to make any statement or representation as to the occupancy of the said building, he had the right to assume that the appellant would procure such information as it desired elsewhere, and when the policy was issued, that it had done so, and was satisfied therewith, and had written the policy in accordance with the information obtained.

"When an agent is aware of the *facts* relative to a risk before the contract is entered into, the insurer is charged with that knowledge, and is estopped from setting up an innocent mistake of the assured either in setting forth the facts in the application, or in omitting to state them. The insurer can not be misled even by a warranty, when at the time the contract is entered into *he knew the actual condition of the risk.*" Wood Fire Ins. (2d ed.), sections 426, 427; May Ins. (2d ed.), p. 647, section 424; *Phenix Ins. Co.* v. *Allen,* 109 Ind. 273; 2 Smith's Lead. Cases (8th Am. ed.), 897; Wade Notice, section 687; *Wilson* v. *Minnesota Farmers',* etc., *Ins. Ass'n,* 16 Ins. Law Jour. 600; *McArthur* v. *Home Life Ass'n,* 73 Iowa, 336.

In *Commercial Fire Ins. Co.* v. *Allen,* 1 South. Rep. 202, it is said: "It is shown that Ainsworth, appellant's agent at the time the policy was applied for and issued, resided in the town of Athens, where the property is situated. With him the assured negotiated and effected the insurance. He was familiar with the premises, and must have known in what manner the houses were connected together, and that the east wall of Mason's upper story rested on the west wall of the house he was insuring. He was the agent of the insurance company, and we have no sympathy with any attempt

The Indiana Insurance Company v. Hartwell.

to transform him into an agent of the applicant in any service connected with the issue of the policy. With him alone the assured had dealings ; and it would be an anomaly if we were to hold he was their agent, and not the agent of the insurance company with which they were negotiating. If he did not represent the corporation, it had no representative, and yet agreed to the terms of a solemn contract. Such shifting use of a paid employee finds no sanction in that sturdy morality which should underlie every system of jurisprudence."

The above is quoted with approval in *Commercial Union Assurance Co.* v. *State, ex rel.,* 113 Ind. 331 (336). See *Geiss* v. *Franklin Ins. Co., ante,* p. 172.

We have not overlooked the case of *Goddard* v. *Monitor, etc., Ins. Co.,* 108 Mass. 56, which in some of its facts is much like the case at bar. The court, however, decided that case against the assured, on the ground that the company had. insured a machine shop, and the property that was destroyed was not a machine shop, but an organ and melodeon factory, and the court said that it became unimportant whether Gleason was the plaintiff's or the defendant's agent.

We find no error in the conclusions of law.

Judgment affirmed, with costs.

Filed April 8, 1890.