WILLIAM PICKENS, Appellee, v. MILWAUKEE MECHANICS INSURANCE COMPANY, Appellant.

**INSURANCE**: Action on Policy—Incendiarism—Evidence. On the
1   issue whether the insured and his renter had feloniously burned the insured premises and contents, witnesses should be permitted to testify: (1)   That one of the alleged conspirators had been seen to leave the premises shortly before the fire; (2) that, when one of the parties moved, shortly before the fire, to the premises in question, he possessed and took with him but a trifling amount of furniture; and (3) (there being relevant counter testimony) that gasoline was not suitable for mixing with paint, and that, if it had been so used, the smell therefrom would have disappeared in a short time.

**TRIAL**: Nonassumption of Agency. Instructions reviewed, and
2   held not to assume that a named party *was* an agent.

**INSURANCE**: What Constitutes ''Soliciting'' Agent. Testimony
3   that a party solicited and secured an application for insurance, collected the premium, delivered both to the recording agent of the company, and that the recording agent issued a policy thereon and delivered it to the soliciting party, who, in turn, delivered it to the insured, justifies a jury in finding that said soliciting party was, under Sec. 1749, Code, 1897, the soliciting *agent* of the company, even though such party was not, in fact, in the employ of the company, and received no compensation from the company.

**APPEAL AND ERROR**: Misconduct—Reversal on Other Grounds.
4   Alleged misconduct on the part of counsel for the prevailing party will not be passed on, when a reversal is ordered on other grounds.

*Appeal from Wapello District Court.*—C. W. VERMILION, Judge.

OCTOBER 2, 1920.

APPELLEE, plaintiff, has verdict and judgment on a fire policy issued by defendant. It appeals.—*Reversed.*

*Jaques, Tisdale & Jaques,* for appellant.

*W. W. Epps* and *A. W. Enoch,* for appellee.

SALINGER, J.—I. It was one theory of the defendant that plaintiff and his renter, Hammersley, had jointly burned the property insured by plaintiff. The property was bought on contract, and for $500 (and insured for $1,200). It burned within two weeks after the insurance was effected. At this time, only $20 of the purchase price had been paid. But plaintiff claims he had added improvements in $309.30. As to one incriminating circumstance, appellant is in error. While Curran did say that plaintiff advised him of the fire on the night of July 4th, and before there was a fire, Curran corrected this, on cross-examination, by stating that, after refreshing his recollection, he desired to say that this talk was on the day after the fire had occurred. In addition to what has been so far set forth, there was testimony that plaintiff went to insurance agent Curran, and procured insurance on the Hammersley household goods, first stating he wanted $500, and finally getting Curran to make it $800, and paying the premium on this insurance. There is a claim that this was gross over-insurance; that the property insured for Hammersley consisted only of a bed and stove. On the other hand, Curran testifies that he wanted to see the goods, and "looked in there," and saw there was an average amount of household goods, and, after satisfying himself, he then told them he would issue the policy; that:

1. INSURANCE: action on policy: incendiarism: evidence.

"I satisfied myself, when I looked in there, that there was an average amount of household goods for the amount of the policy."

A near neighbor testified that the fire which burned the house insured by plaintiff did not start until 2 o'clock in the morning of July 5th. The house smelled of gasoline at 10 o'clock of that night. Plaintiff testified he poured gaso-

line in some paint he put on the house, several days before
the fire.

On the issue of this alleged ·joint incendiarism, defend-
ant made proferts, to which objection was sustained. Some
of these rulings were so clearly right that we will not
lengthen this opinion by setting them out.

As to other proferts: A witness said that he saw some-
one driving away from or from the direction of the house,
at about 10 o'clock of the night of the fire. It would seem
that profert to show that it was Hammersley, was rejected.
Defendant offered to prove by the witness J. A. Underwood
that he knows Hammersley, knew when he moved away to
Rutledge, and that he didn't take very much with him; took
a bed and a stove and a few other small articles. Offered to
prove, further, that Hammersley did not have anywhere near
$800 worth of furniture; that all he had was some cheap
furniture, such as is used by fishermen and clammers. De-
fendant also offered to prove that gasoline was not a proper
ingredient to use to thin paint; and that, if it had been
used, the smell would have disappeared in three hours; and
that it could not be smelled in 20 to 25 feet away.

We hold that all these rejected offers dealt with relevant
and proper circumstantial evidence, and that the objections
to each of these proferts should have been overruled.

II.   The defendant pleaded in avoidance several pro-
visions of the policy, and averred that their violation by
plaintiff defeated his right to recover. The court charged,
and on this appeal it is the law of the case,
2. TRIAL: non-   that plaintiff could not recover unless he
assumption
of agency.   had shown by a preponderance "that said
provisions of the policy were waived by the
defendant company." The only alleged waiver submitted
was conduct and knowledge of one Lundgren, claimed by
plaintiff to have been the agent of the defendant. This in-
volved having the jury pass on whether Lundgren was such
agent. On that point, there was the following instruction:

"If, at the time said policy was issued by the defendant
company or its agents, said company, or its agents solicit-

ing said insurance or taking the application therefor, if any, was informed by plaintiff of the true character and extent of plaintiff's interest in said insured property, and the true circumstances of his title and ownership thereof, and of the character of the lien thereon, then the defendant would be held to have waived the above-mentioned provisions of the policy."

If this were all, it might well be claimed, as appellant does claim, that the jury was, in effect, instructed that Lundgren *was* an agent of defendant, and that his knowledge, at the time he is alleged to have taken 3. INSURANCE: the application, was chargeable to the dewhat constitutes "soliciting" agent. fendant. But what has been adverted to is not all. Immediately following, in the same instruction, is a definition of what is by statute made a soliciting insurance agent. This is, in turn, followed by a charge that the jury was to say whether Lundgren was shown by a preponderance to have been such an agent.

We hold that the charge is not vulnerable to the attack that it assumes the existence of a matter in dispute.

III.   Another complaint of this instruction is that there was no evidence upon which to give it; that there is no testimony that Lundgren had any authority to represent defendant. The same point was raised by the overruled motion to direct verdict for defendant.

The appellee says there was sufficient evidence to take the issue of agency to the jury, and claims this is so because there was the following evidence: Cresswell & Grube were the recording agents of defendant in Ottumwa. Lundgren solicited this policy, collected the premium, turned it to Cresswell & Grube; they acted on his knowledge, issued the policy, delivered it to Lundgren, and he delivered it to Pickens, and Lundgren was paid for his services. Appellee says Lundgren is shown to be the subagent, solicitor, or clerk of defendant agency Cresswell & Grube, by his own testimony, which shows that he left a memorandum on the table at the office of Cresswell & Grube, received the premium for the policy from Pickens, paid it to Cresswell & Grube, received

the policy from Cresswell & Grube, and delivered it to Pickens. The undisputed testimony is that, at the time Lundgren claims to have taken the application involved in this case, he was taking orders for groceries, and he testified, also:

"I was working for Cresswell & Grube, and not for any insurance company they represented, and particularly the Milwaukee Mechanics Insurance Company."

Statute and case law combine against our sustaining the contention of the appellant, and prohibit us from holding that, as matter of law, there is no evidence that Lundgren was such agent as that his knowledge of the state of the title, etc., bound the appellant. Section 1749 of the Code provides as follows:

"Any person who shall hereafter solicit insurance or procure application therefor shall be held to be the soliciting agent of the insurance company or association issuing a policy on such application or on a renewal thereof, anything in the application, policy or contract to the contrary notwithstanding."

A statute in substance like this one was construed in *Bennett v. Council Bluffs Ins. Co.,* 70 Iowa 600. There it was held that, by reason of this statute, if an accredited agent of an insurance company sent his clerk to solicit insurance, so much was not a prohibited delegation of power, whatever may be said of delegating to such a clerk the power to pass upon the application. In the *Bennett* case, as here, the delegation of power and the action of the clerk were not known to the insurance company. And this court said:

"But suppose the application, so filled up and signed, is presented to the company, and it issues a policy thereon, and receives the premium. Is it not bound thereby, even if it does not know who procured the application? We think a policy so issued would be a valid contract of insurance. If material, the company was bound to know who the agent was, and without doubt could be compelled to pay the loss, if one occurred. The statute should be construed, we

think, as embracing any case where a policy has been issued upon an application; and whoever procures such application must be regarded as the soliciting agent of the company issuing the policy."

It is further said that, at any rate, the accredited agent who issued the policy binds the insurer with his knowledge, and that, in the *Bennett* case, the accredited agent necessarily knew, since he had sent his clerk to procure an application, that the application returned had been solicited by the clerk. And finally, it is said that the defendant company was bound to know who procured the application, because its accredited agent (as here) had that knowledge when he issued the policy, and the defendant company was charged with knowledge obtained by this clerk, while soliciting and obtaining the application. The *Bennett* case has approval in *Dodge v. Grain Shippers Mut. F. Ins. Co.*, 176 Iowa 316, 330. Cases to like effect also have approval there, to wit: *London & L. Ins. Co. v. Gerteisen*, 106 Ky. 815 (51 S. W. 617), and *Indiana Ins. Co. v. Hartwell*, 123 Ind. 177 (24 N. E. 100).

The court did not err in submitting as a question of fact whether Lundgren was such agent as that knowledge acquired by him bound the defendant.

IV.   There is complaint that counsel for the prevailing parties was guilty of prejudicial misconduct. Since there must be a reversal without reference to whether this charge is or is not well founded, we treat the complaint as a moot one, under the rule in *Davis v. Hansen*, 187 Iowa 583.

4. APPEAL AND ERROR: misconduct: reversal on other grounds.

For the reasons stated in Division I, the judgment appealed from must be—*Reversed.*

WEAVER, C. J., EVANS and PRESTON, JJ., concur.