IMPROVED-MATCH COMPANY *v.* MICHIGAN MUTUAL FIRE INSURANCE CO.

1. PROCESS — DEFECTIVE SERVICE — WAIVER BY PLEADING TO MERITS.

In a civil action, not involving deprivation of liberty, pleading to the merits, after the denial of a motion to quash for defective service, operates as a waiver of the defect.

2. INSURANCE—SOLICITING AGENT.

One who, after being informed by the general manager of an insurance company that the company would issue policies for him on acceptable risks, and would allow him commissions, placed several policies for the company, and collected and forwarded the premiums, will be held to have acted in a particular transaction, in which he solicited insurance for the company, as its agent, and not as the agent of the insured.

3. SAME—CONDITIONS—FACTS KNOWN TO AGENT—ESTOPPEL.

The provisions of a fire-insurance policy declaring it void if the subject of insurance be a manufacturing establishment, and be operated later than 10 o'clock at night, and denying the authority of agents to waive any condition of the policy except by written agreement duly indorsed, will not avail the insurer as a defense, where the subject of insurance, a factory, is destroyed by fire while being operated after 10 o'clock, if the insurer's agent who solicited the insurance and delivered the policy understood that the factory was in operation day and night; the insurer, under such circumstances, being deemed to have issued the policy with knowledge of all the facts, and to be therefore estopped from setting up the same as a defense.

4. SAME—PROOFS OF LOSS—WAIVER.

>  Where an insurance company is informed by the insured of a loss, and immediately answers that the policy has been canceled on account of violations of conditions in the policy, no proofs of loss are necessary.

5. SAME — EVIDENCE OF LOSS — DIVISION AMONG DIFFERENT CLASSES OF PROPERTY.

>  A judgment against an insurance company for the amount of a policy will not be reversed because the policy covered only the company's proportionate share of concurrent insurance, in different amounts, upon the several classes of property connected with a manufacturing plant, and the plaintiff failed to show the loss on each of the several classes, if it appears from the undisputed evidence that the loss was total, and was only partially covered by insurance; especially if defendant's attorney had ample opportunity below to elicit the information from plaintiff's witnesses, and made no effort to do so.

Error to Wayne; Carpenter, J. Submitted October 25, 1899. Decided December 12, 1899.

*Assumpsit* by the Improved-Match Company against the Michigan Mutual Fire Insurance Company on a policy of insurance. From a judgment for plaintiff, defendant brings error. Affirmed.

*Bacon & Palmer*, for appellant.

*George Gartner*, for appellee.

LONG, J. September 17, 1895, one W. A. Haines, acting as the agent of the defendant company, applied to the plaintiff to issue insurance to it for the amount of $1,500 on its mill property, machinery, etc., situate in the city of Detroit. The defendant company's office was in the city of Lansing. The application was made out by Haines, but not signed by the plaintiff or any of its servants or agents. In the margin of the application appeared the following indorsement:

"Brokers or solicitors: Please answer the following questions:

"Have you personally inspected this risk?
" *A.* Yes.
"Is this property profitable to the assured?
" *A.* Yes.
" Can you recommend this risk as free from any moral hazard, or anything which would make it undesirable?
" *A.* Yes."

This application, signed by Mr. Haines, was forwarded to the defendant company by Mr. Haines. The defendant company thereafter issued its policy of insurance, dated October 20, 1895, and sent the same forward to Mr. Haines, who delivered it to the plaintiff some time between November 10th and 15th following. The building, machinery, etc., were insured in other companies, and the policy in the present case had indorsed upon it, " Other concurrent insurance permitted." The premium was not paid at the time of the delivery of the policy to the plaintiff, but it appears that Mr. Haines gave the plaintiff 30 days in which to pay it. The property was totally destroyed by fire on November 16, 1895. This suit is brought to recover the amount stipulated in the policy.

The defendant, with its plea of the general issue, gave notice:

1. That the property insured by the policy was a manufacturing establishment, and was operated at night later than 10 o'clock, without the consent of the defendant, and that the fire mentioned in the declaration occurred later than 10 o'clock at night, while being so operated, and that, therefore, the policy is void.

2. That the premium on said policy was never paid by, or on behalf of, said assured.

3. That said policy was not delivered to, and accepted by, the assured until after the fire occurred.

4. That no statement or proof of loss under said policy had been made out and served upon said defendant prior to commencement of suit.

The case was tried before a jury, which returned a verdict for plaintiff for the amount of its claim on the policy.

The first question discussed by counsel for defendant in their brief relates to the manner in which the suit was

commenced, and a claim that the court below had no jurisdiction. It appears that a summons was issued out of the Wayne circuit court on October 21, 1896, and returnable on November 3d. This summons was returned not served, and on November 10th an *alias* summons was issued, returnable December 1st. A showing was made by affidavit to the court that defendant had an agent in Detroit who received and delivered policies, and that affiant had good reason to believe he was the agent of defendant for the purpose of receiving or accepting service of process for defendant. On this showing the court made an order that the *alias* summons, with copy of affidavit, be served on such agent, and a copy be mailed to the defendant at Lansing, and that the same should stand as a valid service of the *alias* summons. Motion was then made by the defendant to quash the summons and service. This motion was overruled, when defendant applied to this court for a *mandamus* to compel the court below to vacate that order. This petition for *mandamus* was denied, on the ground that the remedy was by writ of error. *Michigan Mut. Fire Ins. Co.* v. *Wayne Circuit Judge*, 112 Mich. 270. Defendant thereupon pleaded the general issue, and went to trial upon the merits.

1. It is now contended by counsel for plaintiff that by thus pleading to the merits, and going to trial thereunder, the defendant waived the question of due personal service of the writ by which the cause was commenced. That question is expressly ruled by *Manhard* v. *Schott*, 37 Mich. 234, and the cases there cited, in which it was held that pleading to the merits brings one into court, whether lawfully served with process or not, and that he cannot afterwards object to the manner in which he was brought in. Counsel for defendant, however, cite, to sustain their claim, the case of *Warren* v. *Crane*, 50 Mich. 300. But that case was distinguished in *Dailey* v. *Kennedy*, 64 Mich. 208, from the case of *Manhard* v. *Schott, supra;* and in *Durrell* v. *Richardson*, 119 Mich. 592, the same distinction was made, and the claim that no waiver took

place by pleading to the merits and going to trial was limited to cases in which the party is deprived of his liberty. The position taken by the defendant cannot, therefore, be sustained. The parties were properly before the court when the plea of the general issue was filed, and the court had jurisdiction to hear and determine the case.

2. It is contended that Mr. Haines was not the agent of the defendant company, and had no power to waive any of the conditions in the policy, but that he was a mere broker, and acted for the plaintiff in procuring the insurance. This point does not appear to have been made in the court below; but, if it had been, the question is clearly placed at rest by the testimony of Mr. Haines, as follows:

"I received other policies from this company, and delivered them, and collected premiums, and forwarded the premiums, less my commission, to the company. Mr. Garner is the manager of the defendant company, with his headquarters at Lansing, and it was through him that I negotiated the policies. I had a conversation with him prior to the 20th of October, 1895, in reference to my acting for the company. He said to me that he would write policies for me, if acceptable, and allow me a commission, and I placed other policies besides the one in question for the company, probably 15 or 20. I received the policies, delivered them, and collected the premiums, and forwarded them on. In the conversation I had with Mr. Garner, he said that 30 days would be allowed on payment of the premium. In transacting my business, it was done by soliciting insurance. I went to the Improved-Match Company's place of business to see about procuring insurance several times. I knew of their getting some policies through other agents besides myself. My business there was to see whether I could write some insurance for them; and that was the only business I had."

Under these circumstances, it appears conclusively that Haines was the agent of the defendant company, and not of the plaintiff. *Russell* v. *Insurance Co.*, 80 Mich. 412; *Kausal* v. *Insurance Ass'n*, 31 Minn. 20 (47 Am. Rep. 776). The rule in such a case and the reason for it is fully stated in *Russell* v. *Insurance Co.*, *supra*, by a

quotation from the opinion of Mr. Justice Mitchell in *Kausal* v. *Insurance Ass'n.*

3. Counsel for the defendant asked the court to charge the jury as follows:

"It appears from the undisputed facts in this case that the property insured was a manufacturing plant operated during the night-time, and burned while being so operated in the night; and, no written permit to operate the plant during the night being attached to or indorsed on the policy, the policy is void, and your verdict will be for the defendant."

This request was refused, and the court charged the jury on that question as follows:

"As to the knowledge of the agent that the Improved-Match Company was operating its factory at night, you have heard the testimony concerning that. The policy itself contains this language: 'This entire policy, unless otherwise provided by agreement, shall be void if the insured now has, or shall hereafter make or procure, any other contract of insurance, or if the subject of insurance be a manufacturing establishment, and it be operated, in whole or in part, at night later than 10 o'clock.' Now, the testimony in this case shows that this establishment was operated at night, and the loss actually occurred at 3 or 4 o'clock in the morning. I charge you, however, as I have already indicated, that if, at the time this policy was delivered by the agent of the insurance company, he knew that the manufactory was being operated at night, * * * the company is estopped from making this claim; that is to say, the company, under such circumstances as that, must be assumed to have that knowledge, and to make the insurance with it. So that, in disposing of that question, the simple thing for you to determine is whether or not the agent had the knowledge at the time he delivered that policy. If he did, then the policy is valid; * * * if he did not, the policy is void."

Error is assigned on this charge. It appears that the policy, while being dated October 20th, was not delivered until some time later. Mr. Anderson, one of the directors of the plaintiff company, testified that the policy was not delivered until some time from the 10th to the 15th of

November; that, at the time he took the policy, he told Mr.
Haines they were operating the plant night and day.   He
also testified that they started the plant the last week in
October, but he could not state the exact date.   He was
then asked, on cross-examination:   ''It was after you had
the talk with Mr. Haines about this policy?   *A.* Not with
the clause in regard to running nights.''   It is therefore
apparent that the claim of the plaintiff was that the factory
was running night and day when this talk was had with
Mr. Haines, and that Haines knew it was so running
when the policy was delivered.   There is some testimony
tending to support that claim.

The policy contained the clause referred to by the trial
court in its charge, and also provides:

''No officer, agent, or other representative of this com-
pany shall have power to waive any provision or condition.
of this policy, except such as, by the terms of this policy,
may be the subject of agreement indorsed hereon or added
hereto, and, as to such provisions and conditions, no officer,
agent, or representative shall have such power, or be
deemed or held to have waived such provisions or condi-
tions, unless such waiver, if any, shall be written upon or
attached hereto; nor shall any privilege or permission
affecting the insurance under this policy exist or be claimed
by the insured unless so written or attached.''

It is contended by counsel for defendant that the fact
that the plaintiff company, at the time it was negotiating
for this insurance, and while it was building a plant,
stated to the agent that it intended to run nights after it
got in operation, would not be such notice or knowledge
on the part of the agent as would operate as a waiver of
this clause by the defendant company.   Counsel cite, in
support of this contention, *Hartford Fire Ins. Co.* v.
*Davenport*, 37 Mich. 609, and other cases.   In the
*Davenport Case* it appeared that the policy contained a
clause of forfeiture for vacancy of the premises, and that
the insured, before taking the policy, told the agent of the
insurance company that he expected to leave his house
vacant for a year or more, and was informed by the agent

that it would make no difference.    During the vacancy the house was burned.    The court said:

"In this case, the vacancy concerning which the parties conversed, if there was any such conversation, was one contemplated in the future, and the stipulation or understanding, if it amounted to anything, was an executory contract, intended to form a part of the contract of insurance.    This being so, the doctrine cannot be admitted that any part of the completed contract can rest in parol. The policy was the conclusion of the bargain, and its acceptance would exclude any parol promises inconsistent with it.    There is no resemblance between a parol variance of a written contract and a waiver of a condition after it has become binding on the parties."

That is not the claim made here by the plaintiff.    It is not contended that, had the factory not been running nights at the time the policy was delivered, the agent could permit this to be done, or that he could, under such circumstances, have waived this condition in the policy; but it is contended that when the policy was delivered, and in fact before it was delivered, the agent knew that the factory was running nights, and assented to it, and thereby waived the condition.    It was not a promise which contemplated future action in that regard, but the delivery of a policy under conditions then existing.    It was a fact then known by the agent of the company, and consequently then known by the company itself.    Therefore the right to run beyond 10 o'clock at night was a part of the contract itself, those conditions in the policy to the contrary having been waived by Mr. Haines, as agent of the company.    The knowledge of the agent is regarded as the knowledge of the company.    *Gristock* v. *Insurance Co.*, 84 Mich. 166; *O'Brien* v. *Insurance Co.*, 52 Mich. 131; *Copeland* v. *Insurance Co.*, 77 Mich. 560 (18 Am. St. Rep. 414); *Russell* v. *Insurance Co.*, 80 Mich. 412; *Steele* v. *Insurance Co.*, 93 Mich. 84 (18 L. R. A. 85); *Peoria Marine & Fire Ins. Co.* v. *Hall*, 12 Mich. 202.    The court was not in error in refusing this request nor in the charge as given.

4. Counsel for defendant contend that the court should have directed the verdict in favor of the defendant because of the failure of the plaintiff to make and serve proofs of loss.    It appears that, after the fire, the plaintiff wrote the defendant about it, and that it was a total loss.    The defendant company immediately answered that it had canceled the policy, and called attention to stipulations in the policy in reference to running after 10 o'clock at night, and added: "I am informed that your establishment burned at about 3 o'clock in the morning, and while it was being operated."    This was virtually a denial of liability, and no proofs of loss were necessary to be made; but, if any contention could arise over the meaning of this letter, it has been settled by the verdict.    The question was submitted to the jury whether there had been a denial of liability by the defendant company.

5. Counsel for defendant asked the court to direct the jury that there was no evidence by which they could find the amount of the loss sustained by the plaintiff upon each item of property insured.    This was refused, and, we think, very properly.    The policy states:

· "$1,500—Being 15-140 of the following specific and concurrent insurance, divided to apply as follows:

"$7,000 — On their three-story brick, gravel-roof building, including foundations, elevator, steam and water pipes, heating pipes, and all permanent fixtures attached thereto, situated on the west side of Bellevue avenue, between Kirby avenue and Frederick street, Detroit, Mich.

"$6,000 — On their fixed and movable machinery of all kinds, with their spare parts and attachments, shafting, gearing, belting, hangers, pulleys, tools, trucks, cases, tables, boxes, electric-light wiring and fixtures, pails, hose, and other apparatus used in their business that is not included with building or otherwise specified.

"$1,000 — On their boiler and engine, and their connections, valves, steam and water pipes, hose, pump, and Huyett & Smith's heater and fan, while contained in their brick boiler and engine rooms attached to the above-described building."

Under the strict rule of law, it was the duty of the

plaintiff to show the amount of loss upon each class of property insured. This might easily have been shown, and was undoubtedly an oversight on the part of the attorney for the plaintiff. In view, however, of the small amount of the insurance, and the undisputed evidence of the amount of the loss, which was total, and the estimate placed upon their values by the defendant's agent in the application, we do not think it can be said that there was no evidence of the amount of the loss upon each class of property. We the more readily reach this conclusion because the attorneys for the defendant might easily upon the trial have cross-examined the witness as to the value of the various articles of property destroyed and the loss thereon. They, however, chose to rest content with the proof, and raised the question afterwards only by request to charge. Under these circumstances, we do not think the judgment should be reversed.

Judgment is affirmed.

The other Justices concurred.