[Civ. No. 1637.   Third Appellate District.—February 27, 1917.]

BEATRICE GOLDSTONE, Appellant, v. COLUMBIA LIFE & TRUST COMPANY (a Corporation), Respondent.

INSURANCE — PROCURING OF POLICY BY UNLICENSED AGENT — VIOLATION OF STATUTE — LIABILITY OF INSURER. — A life insurance company cannot, by violating the provisions of section 633 of the Political Code, which declares that no person shall in this state act as the agent or solicitor of any insurance company doing business herein until he has produced to the commissioner, and filed with him, a duplicate power of attorney from the company, or its authorized agent, authorizing him to act as such agent or commissioner, absolve itself from liability on a contract that it has authorized or ratified, although the contract may have been secured by a person not an agent or solicitor in the full meaning of the statute. Such statutory provisions as to agents do not change the rule of law as to principal and agent between the company and the policy-holder, and the company attempting to evade such statute is nevertheless bound to its policy-holders as though the statute had been complied with.

ID.—FALSE ANSWERS IN APPLICATION—FRAUD OF AGENT—RECOVERY ON POLICY.—Where false answers are written in an application for life insurance, it is the duty of the insured after delivery of the policy to notify the insurer of the fraud, and where the same is not done, the fraudulent act of the agent is thereby approved, and no recovery can be had on the policy.

ID. — REPUDIATION OF FRAUD — DUTY OF INSURED. — A delay of four months in repudiating the fraud of the agent is fatal to recovery, as it is the duty of the insured to act promptly.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. George A. Sturtevant, Judge.

The facts are stated in the opinion of the court.

Albert Jacoby, for Appellant.

Wood, Montague, Hunt & Cookingham, Gavin McNab, and Nat Schmulowitz, for Respondent.

BURNETT, J.—By direction of the court and on motion of respondent a verdict in favor of the company was rendered

by a jury and the appeal is from a judgment entered thereon.

Plaintiff, widow of one Jacob Goldstone, brought the action as beneficiary named in a life insurance policy issued by respondent to said Jacob Goldstone on September 26, 1913. It appears that one of the conditions of the policy was as follows: "This contract of insurance is made in consideration of the application for this policy, a copy of which is hereto attached and which application is hereby made a part of this contract." In said application, signed by said Goldstone, appears this covenant: "I hereby agree that the statements herein contained, together with the statements made by me to the medical examiner and contained in part 2 of this application, are hereby warranted to be true, full and correct as facts, and that this application, together with the policy which may be issued, shall constitute the contract between me and the company."

It is the claim of respondent, fully set up in its answer, that, in violation of said agreement and for the purpose of defrauding the company, the insured gave false answers to certain questions that were material to the risk, and that therefore the company was relieved of any liability under said policy. On the other hand, appellant contended at the trial that the answers were written in by an agent of the company without the knowledge or connivance of the insured, and therefore the insurer cannot take advantage of its own wrong, but is charged with the same responsibility as though the answers were true.

The questions were as follows: (1) "Have you ever applied to any company or society or order for insurance without receiving a policy or certificate of the exact kind, rate, and amount applied for, or for reinstatement of a lapsed policy or certificate without being reinstated?" and (2) "Is any negotiation or application for other insurance now pending or contemplated?" Each question was answered in the negative, whereas, admittedly, the truth is that, on September 22, 1902, Goldstone had made an ineffectual application for life insurance to the Northwestern Mutual Life Insurance Company of Milwaukee; likewise, in November, 1903, to the Guardian Life Insurance Company of New York; similarly, in August, 1913, to the Equitable Life Assurance Society of the United States; also to the New York Life Insurance Company, in August, 1902, and another, to the same com-

pany, in 1905; furthermore, in July, 1913, he made another application to the said New York Life Insurance Company, which application was still pending at the time the application herein concerned was made.

In pursuance of her contention plaintiff called as a witness one S. J. Levy, from whose testimony it appears that he solicited from said Goldstone the said insurance; that he was the duly authorized agent of the said New York Life Insurance Company, and had issued to him, pursuant to section 633 of the Political Code of this state, as such agent, a power of attorney; that, prior to his interview with Goldstone, he was visited at his office at 14 Montgomery Street, San Francisco, by one B. F. Bernsten, then the acknowledged and admitted general agent of defendant for the state of California; that said Bernsten requested Levy to act as the agent of respondent in and around the territory of San Francisco, but was informed by the latter that he could not do so on account of his connection with the New York Life, a competing company, whereupon Bernsten, in order to get around and evade the law, proposed as follows: ''Well, make the contract in the name of your wife, make her the agent and you can be the active man in obtaining the business whatever it is.'' Levy continued: ''Under those circumstances, we entered into an agreement whereby the business was to be solicited by myself, but Mrs. Levy was to be known as the agent, in order not to conflict with the contract that I had with the New York Life Insurance Company.'' Mrs. Levy was thereupon appointed such agent, and Mr. Levy, in accordance with his agreement with Bernsten, proceeded to solicit, procure, and write insurance for the defendant company, and among others he approached Goldstone, submitted to him for his signature said application for insurance, collected the premium, and subsequently delivered the policy in question to said deceased. Appellant then attempted to show by said witness that he wrote in the answers to said questions without the knowledge of the insured, but the court sustained an objection, and it was not permitted. The ruling was based upon the court's understanding of the force and effect of said section 633 of the Political Code, providing that ''No person shall in this state act as the agent or solicitor of any insurance company doing business in this state until he has produced to the commissioner, and filed with him, a duplicate

power of attorney from the company, or its authorized agent, authorizing him to act as such agent or solicitor," and providing also for the issuance by said commissioner of a license to such agent. The court, in holding that the case falls within said section, declared that it was enacted to the end that, if a broker or anybody else comes to one selling life insurance, there may be a safe way for the one solicited to find out whether the company is authorized to do business in the state and also whether the solicitor is authorized to solicit insurance, and the court seemed to be of the opinion that no one acting as an agent could bind the company unless he was so commissioned, and that a person dealing with a solicitor not so authorized does so at his peril.

Said section, no doubt, was enacted for the protection of the public as well as of the insurance companies, and its provisions, of course, should be complied with. No company should knowingly fail to regard its requirement nor should any person assume to act as agent or solicitor without said power of attorney and said license. However, as far as the company is concerned, we do not understand that by its violation of said statute it may absolve itself from liability for a contract that it has authorized or ratified, although the contract may have been secured by a person not an agent or solicitor in the full meaning of the statute. The reasonable rule, we think, and one sustained by the authorities is that such statutory provisions as to agents do not change the rule of law as to principal and agent between the company and the policy-holder, and that the company attempting to evade such statute is nevertheless bound to its policy-holders, as though the statute had been complied with. We think, also, that there is justification in the record for the contention that said S. J. Levy was authorized by the company to solicit said insurance, and also that his act in so doing was subsequently ratified. It would follow that the court was technically in error in sustaining the objection to the questions asked of the witness. It would seem almost incredible that one of some standing, as Levy must have been, would be guilty of such reprehensible and even despicable conduct as to attempt deliberately the perpetration of a fraud upon the company and the deceased, but we must assume that his answers, if given, would have presented such a situation.

However, we need not go into that at length as, notwithstanding such error, under the admitted facts, it must be held, we think, that the law demands the verdict that was rendered.

As already seen, the policy was immediately delivered to Goldstone. It was his duty to read it, and we must assume that he did so. (*Long* v. *Newman,* 10 Cal. App. 430, [102 Pac. 534].) He knew, therefore, that his application as well as the certificate of the physician, each of which was an integral part of the policy and the consideration therefor, contained two material and vital statements that were false. His legal and moral duty was then to notify the company of the fraud that had been attempted. By his silence he virtually approved of the fraudulent act of the agent and became responsible for it. By his conduct he made Levy *his* agent as well as the agent of the company, and the forfeiture of the policy is the price of his folly. If he had pursued the course required by good conscience, the company might have excused the misrepresentation, but, of course, that is merely problematical. He could at least have secured a return of the premium paid, but by his acquiescence he denied himself any relief from the wicked act of the agent of the company.

This feature of the case is covered by the decision of the supreme court in *Madsen* v. *Maryland Casualty Co.,* 168 Cal. 204, [142 Pac. 51], wherein one Graff, a soliciting agent for defendant, solicited the insurance from plaintiff who was very deaf, as was well known to said Graff. The application for the policy was filled out by Graff, and, without being signed, or read to or by plaintiff, was sent to the general agent of defendant. It contained a warranty to the effect that plaintiff was neither partially nor totally deaf. A policy was issued by the defendant and sent to plaintiff through the mail. In reversing the case the court said: "By accepting and retaining the contract without objection plaintiff was bound by its terms and cannot now be heard to say that he did not read it or know its terms." Many cases are therein cited in support of the principle. We call specific attention to only two of them. One is the familiar case of *New York Life Ins. Co.* v. *Fletcher,* 117 U. S. 519, [29 L. Ed. 934, 6 Sup. Ct. Rep. 837], wherein the court, through Mr. Justice Field, said: "There is another view of this case equally fatal to a recovery; assuming that the answers of the assured were falsified, as alleged, the fact would be at once

disclosed by the copy of the application, annexed to the policy, to which his attention was called. He would have discovered by inspection that a fraud had been perpetrated not only upon himself but upon the company, and it would have been his duty to make the fact known to the company. He could not hold the policy without approving the action of the agents and thus becoming a participant in the fraud committed. The retention of the policy was an approval of the application and of its statements. The consequences of that approval cannot after his death be avoided.''

In *Quinlan* v. *Providence etc. Ins. Co.*, 133 N. Y. 356, [28 Am. St. Rep. 645, 31 N. E. 31], it is said: ''In determining the question of liability in this case, it is immaterial whether the plaintiff read the policy or not, or that he had no actual knowledge of the conditions or of the limitations of the power of Kelsey. The conditions and limitations were a part of the contract, and he was bound to take notice of them, and is not excused upon the plea that he omitted to acquaint himself with the provisions of the policy.''

Nor do we think there is any force in the contention that the Madsen case should not be considered controlling for the reason that therein the agent was a mere soliciting agent and the time during which the policy was in possession of the insured was a period of several years. S. J. Levy was no more than a soliciting agent here. At least, he had no authority to waive warranties for the company, and was therefore in no better position in that respect than a soliciting agent. This question of the authority of an agent to waive conditions is learnedly discussed in *Sharman* v. *Continental Ins. Co.*, 167 Cal. 117, [52 L. R. A. (N. S.) 670, 138 Pac. 708], and we need not further consider it.

As to the time, a delay of four months in repudiating the fraud is as fatal as a delay of four years. It is the duty of the insured to act promptly. He cannot speculate with death. It is, of course, always imminent, and at any moment it may claim even the most robust. The situation of the insured and the nature of the contract made it his imperative duty to act immediately. The importance of such speedy action is certainly emphasized by the circumstance of his death within a little less than four months from the time the policy was issued. In the absence of any claim that the delay was

caused by any act of respondent or that it was unavoidable for any reason, we consider it fatal to a recovery.

The cases generally seem to take it for granted that the insured must act with great promptness in such contingency. We may refer specifically to only one, decided by the supreme court of Wisconsin, *Bostwick* v. *Mutual Life Ins. Co.,* 116 Wis. 392, [89 N. W. 538, 92 N. W. 246], reported with an exhaustive note in 67 L. R. A. 706, wherein a similar question was involved.   Therein it was held that "If a person receives a policy of insurance ostensibly in response to an application therefor, which he signed and parted with in the belief, induced by the fraud of the agent taking the same, that it called for a policy different from that which it called for in fact, he is bound, as a matter of law, to examine the policy within a reasonable time after it comes to his hand, and to discover obvious· departures therein from the one which he supposed he was to get, and promptly, upon discovering the same, to rescind the transaction, give the company due notice thereof, and do all on his part which justice requires to restore the former situation, or he will be held to have accepted the policy as satisfying his application, so as to be precluded from rescinding the same," and it was further held that the "reasonable time" began to run when he received the policy, and that a delay of four months and a half before moving to rescind is too long a time.

We think the judgment should be affirmed, and it is so ordered.

Chipman, P. J., and Hart, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on April 26, 1917.