FARRINGTON v. GRANITE STATE FIRE INS. CO. OF PORTSMOUTH, et al.

Nos. 7579, 7580, 7581 and 7582.

Decided June 14, 1951.   (232 P. 2d 754.)

See 44 C. J. S., Insurance, sec. 154. Insurance premium, waiver by acceptance of. 29 Am. Jur., Insurance, sec. 857.

*Ralph & Kastler*, Salt Lake City, for appellant.

*Paul B. Cannon, Irving H. Biele* and *Cheney, Marr, Wilkins & Cannon*, all of Salt Lake City, for respondent.

CROCKETT, Justice.

These four actions were on four identical fire insurance policies issued by the defendant companies to the plaintiff on the same building. The actions were combined for trial in the lower court and are treated together here. The building was destroyed by fire and a jury found against the defendant companies for the full amount of their coverage. Defendants appeal asserting they were not bound on the policy because (1) the subject matter of the policy described as "a building occupied as a skating rink" did not exist as such at the time the policy was issued, and (2) there was substantial concealment and misrepresentation on plaintiff's part concerning the building so that there was no meeting of the minds to form a valid contract.

The court instructed the jury that one Ned J. Bowman, through whom plaintiff obtained the insurance, was the agent of defendant companies and that the information furnished him was imputed to them. Defendants assail this as error. If this determination of the court was right, then, as will appear from the facts hereinafter recited, the defendant companies knew of the nature and condition of the building when the policies were issued and there could be no question of misrepresentation or concealment regarding the condition or purported "non existence" of the building.

The pertinent facts are as follows: The plaintiff, Mrs. Alice D. Farrington, in February 1946 purchased a second-hand prefabricated portable building with sectional maple flooring in Cyrena, Illinois, had the same transported to Orem, Utah, and caused it to be erected on some ground she leased from the City of Orem in its park. It was used for some time as a roller skating rink; this was discontinued and was later rented out occasionaly for dances. About the middle of January, 1949, exceptionally heavy snows caused a part of the roof to collapse, the extent of which is in dispute. The damaged portion was then stored in the rest of the building.

During the year 1948 the plaintiff had listed the building for sale for $15,000 with Ned J. Bowman, Vice-President of Capson-Bowman, Inc., a Salt Lake Real Estate firm. Plaintiff telephoned Mr. Bowman in March, 1949, and informed him that she wanted to place $10,000 insurance on the property. Mr. Bowman had seen the building in 1948 when he took the listing but had not seen it since. Plaintiff testified that when she asked for the insurance she explained to him the condition of the building as it then stood. Mr. Bowman himself testified that in the conversation

"she told me that a portion of it had been caved in and it was a sectional building, a building that could have been dismantled, which I knew, and she stated that a portion of it was stored, in good order, in the portion of the building that had not collapsed."

He quoted her a rate of insurance which was $2.64 per hundred dollars per year, which is admittedly a very high rate for fire insurance.

Bowman passed on this application and information to a Mr. Hodgen, the insurance man for his company, who in turn relayed it to Russell Wight and Company, general agents for the defendant companies. The Wight Company, for reasons of its own, divided this insurance, 25% to each of the four defendant companies and issued four policies, one from each defendant. The four policies were countersigned by Russell L. Wight; were then sent to Capson-Bowman, Inc., who placed a sticker bearing their firm name in a blank space left on the policies and designed for that purpose. They then delivered the policies to the plaintiff and proceeded to collect the premiums, retaining their commission and remitting the balance to Wight & Company. The premiums were paid $50 March 21st, $50 April 19th and $163.40 June 9, 1949. The plaintiff had received the policies March 21, 1949 and a short time thereafter she had a conversation with Mr. Hodgen with regard to the vacancy provision in the policy, in which she told him that the building had formerly been used as a skating rink and advised him of its condition. On April 22, 1949 the building was destroyed by fire of undetermined origin. Defendants investigated the fire and after some months of investigation and negotiation denied liability on the grounds stated in the first paragraph of this opinion. A jury trial resulted in a verdict for the plaintiff for the full amount of the defendant's policies, $2500 each, totaling $10,000.

From the facts hereinabove recited, it is plain that if Bowman was acting as agent for the defendant companies, so that they are charged with his knowledge, they had information concerning the character of the building and its condition before the policies issued so there could be no question about the binding force of the insurance contract.

In support of their contention that Bowman was not their agent, the defendants refer to certain provisions of the

Insurance Code enacted by our 1947 Legislature, Sections 43-17-1 et sequi. Both parties in their briefs treat in detail a number of sections of that Code, each claiming the benefit of its own interpretation. The essence of the defendants' contention is that because Bowman was not licensed as an agent for the defendant companies, and was not listed as agent in the license which was issued to his company, that he could not act as agent for the defendant companies. They argue that his function in this transaction was that of a broker and that because Section 43-17-36 provides that a person licensed as a broker should not be licensed as an agent precludes the possibility of Bowman being defendant's agent. Defendants insist, however, somewhat inconsistently, throughout their brief that in connection with the placement of this insurance that Bowman was in fact the agent for the plaintiff. We deem it unnecessary to set forth a detailed analysis of the various sections of the Code because it was enacted primarily for the purpose of regulating insurance companies, agents, brokers, solicitors and adjusters. It was not intended to change or control the ordinary rules of agency between insurance companies and the public with whom they deal. If Bowman's conduct was in fact that of an agent for defendants, the licensing and regulatory provisions of the statute would not change that relationship so far as the plaintiff was concerned.

Mr. Bowman was the Vice-President of Capson-Bowman, Inc.; the business signs, letterheads and advertising of that company stated that it was engaged in the real estate and insurance business. Under their method of operation he had the right to, and customarily did, solicit sales of and sell insurance; he took the plaintiff's application for and the information concerning her insurance and transmitted it to the defendant company; upon the basis thereof, the defendants issued the policies; sent them to him, he placed his firm name thereon, addressed the policy to plaintiff, took the premiums, deducted the commissions

and remitted the balance to the defendants. The insurance companies adopted and took the benefits of all his conduct favorable to them. It seems quite inconsistent for them to accept the advantages of everything he did for their benefit and yet insist that they are not responsible for the knowledge he acquired about the building within the necessary and ordinary scope of his duties in handling the transaction. From the facts stated he was their agent and they are charged with his knowledge. It certainly would be casting an unreasonable burden upon a lay person to require him to make inquiry beyond the authority of Mr. Bowman under the circumstances which were present here.

There is ample good authority for the view we take of the matter of agency: In *New Brunswick Fire Insurance Company* v. *Nichols,* 210 Ala. 63, 97 So. 82, the insured had applied to an agent authorized to write insurance for one company. A policy was written which was later cancelled by the insurer. The agent then contacted a second agent who wrote the insurance in another company. After loss by fire it was held that all information given by the insured to the first agent constituted knowledge of the insurer issuing the second policy. In *Harris* v. *Sachse,* 160 Pa. Super. 607, 52 A. 2d 375, 379, the court in ruling on the same question said:

"In general, one dealing with an insurance agency in ordinary course, need not concern himself with the extent of the authority of an employee in the office of the agent who undertakes to act for the agent. The apparent authority with which such employee is clothed by the agent renders him and his principal liable regardless of the actual limits of the authority of the employee." Citing Restatement, Agency, Section 8.

*May* v. *Western Assurance Company,* C. C., 27 F. 260, 261, is a case the facts of which, so far as the principles involved are concerned, are practically identical with the instant case. Plaintiff ordered $20,000 of insurance from an agent Ames who was unwilling to have his own company write that amount. He called a Mr. Seeley, the general

agent of the defendant company who caused a policy for $2500 to be issued, signed by himself and transmitted through Ames to the plaintiff. The court held that the company was bound by the actions of their general agent Seeley and of Ames; that if Seeley chose to act through Ames that the latter became his sub-agent so that the company was bound by his conduct, stating expressly as follows:

"Whatever Mr. Seeley does within the reasonable scope of the powers committed to him is binding upon the company. If, instead of making an examination himself, he prefers, or is willing, to take the representations of another insurance agent, the company is bound by that act."

Other cases similarly supporting the view taken herein are: *Indiana Insurance Company* v. *Hartwell*, 123 Ind. 177, 24 N. E. 100; *Barone* v. *Aetna Life Insurance Company*, 260 N. Y. 410, 183 N. E. 900; *Goldstone* v. *Columbia Life & Trust Company*, 33 Cal. App. 119, 164 P. 416; *Improved Match Company* v. *Michigan Mutual Fire Insurance Company*, 122 Mich. 256, 80 N. W. 1088; *Benanti* v. *Security Insurance Company*, 222 Mo. App. 763, 9 S. W. 2d 673. See also 29 Am. Jur. 113.

In view of the fact that the trial court was correct in ruling and in instructing the jury that Bowman was agent of the defendant companies, that should conclude the matter. However, defendants further insist that the plaintiff did not fully disclose the nature and condition of the building even to Bowman. So in order to fully dispose of defendants' attacks on the judgment, we briefly discuss the two contentions made by the defendants set forth at the beginning of this opinion.

The defendants claim that the snow had caved in and destroyed the building to the extent that it was largely a mass of debris, instead of an intact, occupied building which they intended to insure. There was a conflict in the evidence concerning the nature and condition of the building. The jury having found for the

plaintiff, we must assume that their finding was in accordance with the evidence most favorable to her. From that evidence, could it be said that "the subject matter did not exist" as claimed by the defendants? The structure had to have some sort of descriptive title to designate it in the insurance policy. It could not be adequately described as merely a "structure" or "building." The printed form of the policy contains the words "building while occupied as" and the descriptive words "skating rink" were added by typing them in. That was the use to which the building had been put and was the best descriptive title for it.

The policy by its terms expressly covered the circumstances this building was in. It provides that, with certain exceptions not applicable here,

"* * * permission is granted to remain vacant or unoccupied without limit of time."

Under paragraph 7(1) building:

"* * * (d) material and supplies intended for use in construction, alteration or repairs of the building * * *."

And the policy also covered under paragraph 22

"permission granted: (a) * * * a change in use or occupancy * * * (c) for the building to be in course of construction, alteration or repair * * *."

The court presented this issue to the jury in its instruction #9, wherein it told them that the subject matter of an insurance policy must exist at the time the insurance is taken out or the policy is void and in order for the plaintiff to recover, that they had to find that the "building occupied as a skating rink" actually existed at the time plaintiff procured the insurance therein. It does not seem open to doubt that the mere fact that part of the building was dismantled did not so substantially change its nature that it could be said that it was not in fact the subject matter of the policy. But if there were any

doubt about it the jury's verdict for plaintiff under the above instruction resolved it. There is no question about the fact that an incomplete building can be insured as a building. 29 Am. Jur. 217, Appelman's Insurance Law & Practice, Vol. 4, page 175.

The other contention concerning misrepresentation and concealment regarding the condition of the building is the same issue in a little different dress. It is axiomatic that an insurance company may not avoid liability on account of any misrepesentation made in procuring the insurance contract unless such misrepresentation is material. Section 43-19-8 of The Utah Insurance Code hereinbefore referred to provides in substance that no such misrepresentation shall be deemed material or void the contract unless it was made with intent to deceive. There is no evidence in the record that the fact that the building was partly dismantled and vacant would increase the risk of fire loss. Although generally a vacant building has a greater hazard of loss by fire, the fact that the electric power had been cut off and there was no danger from smoking by skating patrons might indicate to the contrary. From aught we know it is as likely that there was less risk as it is that there was greater. At least there is no evidence from which we can determine that even if there had been concealment or misrepresentation that it was material to the risk. The same may be said with respect to the necessary intent to deceive. The record is devoid of any showing from which such intent might be inferred.

There is another subject which, while not controlling in the case, perhaps should be mentioned. That is, the matter of waiver by acceptance of premiums. As hereinbefore stated, the fire occurred April 22, 1949. Within four days thereafter, the adjuster for the defendant company, Knox Moore, a man of twenty-five years experience in such matters, was on the scene investigating the fire thoroughly; talked to the fire department chief; took pictures and inventoried material. All of the facts upon

which the defendant claims right of rescission were known to the defendant within a very few days of the fire. A month and a half later, on June 9, 1949, the plaintiff paid and the defendant company accepted $163.40 as the remaining balance on the premium. They made no claim of a right to avoid and rescind the policy until the filing of their amended answer and counterclaim April 25, 1950, just a year and three days after the fire loss. One who claims a right to rescission must act with reasonable promptness, and if after such knowledge, he does any substantial act which recognizes the contract as in force, such as the acceptance of the more than half of the premium would be, such an act would usually constitute a waiver of his right to rescind. In 25 Am. Jur. 653, it is stated:

> "It [the defendant company] cannot treat the policy as void for the purpose of defense to an action to recover for a loss thereafter occurring, and at the same time treat it as valid for the purpose of earning and collecting further premiums."

Defendants also complain that the jury's verdict was so excessive as to indicate that it was manifestly the result of passion and prejudice. It is undisputed that she paid only $3,000 for the building in the State of Illinois but her evidence was that she paid in excess of $9600 to have it shipped out here and erected upon the ground where it was. There was an estimate of replacement cost in excess of $17,000 and Mr. Bowman testified that the value was above $12,500 in the condition when he saw it, but he listed it to sell at $15,000. There was competent evidence upon which the jury could base the loss at $10,000 as they did.

The judgment is affirmed. Costs to respondent.

WADE and McDONOUGH, JJ., concur.

WOLFE, Chief Justice (concurring).

I concur. In this case, what difference does it make in the last analysis whether Bowman was the agent of plaintiff or

of defendants or a broker or such a go-between as to be the agent of both by being at various times the agent of one or the other, if it is true as is held in the latter part of the opinion, and I think correctly, that the description of "skating rink" was merely for the purpose of identifying the building and that there were no material concealments or misrepresentations.

If the companies intended to insure the building identified as a skating rink, and if the fact that part of this sectional building had collapsed and was stored in the remaining part of the building was not a material concealment, then an instruction that Bowman was the agent of defendants so that his knowledge conveyed by plaintiff was the knowledge of defendants, is immaterial and certainly unprejudiced. Even if, in law, knowledge of Bowman cannot be imputed to the defendants, they intended to and did insure against loss by fire of the structure identified as a skating rink. And they were not deceived in any material matter, nor was there concealment as to any material matter. They received the compensation as demanded for such insurance. What more is required to find against them in this case? While there are other grounds justifying the judgment, they are more technical in nature. The above is the heart of the matter.

LATIMER, Justice, concurs in the results.