GOLDEN RULE INSURANCE
CO., Plaintiff,

v.

Gwendolyn HUGHES, Defendant.

No. 91–C–211A.

United States District Court,
D. Utah, C.D.

Feb. 11, 1992.

Guy E. McGaughey, Jr. (pro hac vice), McGaughey & McGaughey, Lawrenceville, Ill., Darwin C. Hansen, Morgan & Hansen, Salt Lake City, Utah, for plaintiff.

Earl C. Spafford, Spafford & Spafford, Salt Lake City, Utah, for defendant.

### ORDER DENYING SUMMARY JUDGMENT

ALDON J. ANDERSON, Senior District Judge.

The above-captioned matter is before the court on plaintiff Golden Rule Insurance Company's Motion for Summary Judgment. The court heard oral arguments on January 24, 1992 and took the matter under advisement. Having reviewed the briefs and studied the applicable law, the court renders its order denying the Plaintiff's motion for summary judgment.

### I. BACKGROUND

On September 19, 1989, defendant Gwendolyn Hughes signed an application for health insurance with the Plaintiff. Pl. Mem.Supp., Doc. No. 22, at 2, ¶ 1. On the application questionnaire, Defendant revealed neither that she had a disorder of

the digestive system nor that she was taking medication for constipation.[1] *Id.* at 2–3, ¶ 5. Defendant testified in deposition that she disclosed her relevant past medical history to insurance agent Thomas P. Callister. Def.Mem.Opp'n, Doc. No. 26 at 2, ¶ 5. Defendant alleges that Callister instructed Defendant to write down her physician's name and informed her that the Plaintiff's underwriters would obtain the relevant medical information directly from the physician.[2] *Id.*

In October 1990, Defendant presented claims for the treatment of a perforated intestine to the Plaintiff. Pl.Mem.Supp., Doc. No. 22 at 3, ¶ 7. Apparently, this injury was not a consequence of Defendant's previous bowel dysfunction, but was a result of injuries sustained in an automobile accident. Def.Mem.Opp'n, Doc. No. 26 at 6, ¶ 19. In connection with the presentment of these claims, Plaintiff conducted a review of Defendant's medical history. Pl. Mem.Supp., Doc. No. 22 at 3, ¶ 11. During this review, Plaintiff discovered Defendant's history of bowel dysfunction. *Id.* at 3, ¶ 12. On September 21, 1990, as a result of this review, Plaintiff sent a letter to Defendant denying all claims and voiding the policy. *Id.* at 4, ¶ 16.

On February 28, 1991, Plaintiff filed the present action seeking a declaration that it properly voided the policy and asking the court to resolve matters regarding the refund of premiums paid. Complaint, Doc. No. 1, at ¶ 10–12. On December 3, 1991, after the parties had conducted initial discovery, Plaintiff moved for summary judgment.

## II. DISCUSSION

At the outset, the court notes its role in ruling on a motion for summary judgment. Rule 56 of the Federal Rules of Civil Procedure "permits the entry of summary judgment on a claim when there is no genuine issue of material fact outstanding." *City Consumer Serv. Inc. v. Horne*, 578 F.Supp. 283, 288 (D.Utah 1984) (citing *Adickes v. S.H. Kress Co.*, 398 U.S. 144, 157–59, 90 S.Ct. 1598, 1608–09, 26 L.Ed.2d 142 (1970)). "As a matter of law, the movant must show entitlement to summary disposition beyond all reasonable doubt." *Id.* (citing *Norton v. Liddel*, 620 F.2d 1375, 1381 (10th Cir.1980)). The trial judge, however, "must construe all pleadings, affidavits, and depositions liberally in favor of the party against whom the motion is made." *Id.* "Where different inferences can be drawn from conflicting affidavits, depositions and pleadings, summary judgment should not be granted." *Id.* (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962)). Accordingly, if doubt arises regarding any issue, the court must resolve the doubt in favor of the non-movant, in this case the Defendant, and deny the motion.

## A.

Plaintiff grounds its motion on Utah Code Ann. § 31A–21–105(2) (1986).[3] Under

---

1. More specifically, the Defendant has received the following treatment or medication for bowel disorder: (1) two bowel resections; (2) Compazine for constipation; (3) Tagamet for constipation; and (4) doctor's visit for nausea on March 22, 1989. Pl.Mem.Supp., Doc. No. 22 at 2–3, ¶ 5. Additionally, Defendant admits a history of constipation problems dating to her youth. Def.Mem.Opp'n, Doc. No. 26, at Ex. A (Dep. of Gwendolyn Hughes at 20).

2. Callister, in deposition, testified that he did not specifically remember either being told of Defendant's condition or telling Defendant that the underwriter would discover any problems. Def.Mem.Opp'n, Doc. No. 26, at Ex. D. (Dep. of Thomas P. Callister at 20). Notwithstanding Callister's uncertain recollection, he does not deny that he and the Defendant may have had such an interchange. *Id.*

3. Subsection (2) reads as follows:

   (2) Except as provided in Subsection (5), no misrepresentation or breach of an affirmative warranty affects the insurer's obligation under the policy unless:
   (a) the insurer relies on it and it is either material or is made with intent to deceive; or
   (b) the fact misrepresented or falsely warranted contributes to the loss.
   Plaintiff, in this motion, asserts only that it relied on Defendant's material misrepresentations and because of this reliance it is entitled as a matter of law to void the policy. The court is not asked to address whether Defendant intended to deceive Plaintiff or whether the alleged misrepresentation contributed to some loss suffered by the Plaintiff.

Subsection (2), an insurer may void a policy, if it has relied on material misrepresentations made on the application for insurance.[4] Plaintiff argues that it relied on what it alleges were material misrepresentations and is, therefore, entitled to void the policy. The court must address two issues: (1) whether Defendant's application for insurance contained misrepresentations; and (2) whether those misrepresentations were material.[5] If the court finds material factual questions lurking at any point in the analysis or if, as a matter of law, either question is answered in the negative, the motion must be denied.

### B.

■ The court first addresses the misrepresentation issue: whether Defendant misrepresented her medical condition. Defendant argues that there was no misrepresentation, because she disclosed her relevant medical history to Callister, whose knowledge is imputed to Plaintiff. Plaintiff's argument, on this issue, has two parts. First, even if Defendant did disclose her condition to Callister, such disclosure is not imputed to the Plaintiff, because the language of the policy prevents the agent from waiving provisions of the contract. Accordingly, under Plaintiff's view, misrepresentation must be judged on the written application, irrespective of any disclosure to Callister. Second, Defendant's disclosure to Callister is irrelevant, because Callister is not Plaintiff's agent, and even if Callister was an agent, his statements to Defendant were not binding on Plaintiff because, in making them, he acted outside the scope of his agency. Therefore, Callister's knowledge cannot be imputed to the Plaintiff. The court finds Plaintiff's position unpersuasive.

First, it is well settled that under appropriate circumstances an agent may waive written provisions of a policy and that the waiver will be binding on the insurer. *Hardy v. Prudential Ins. Co.*, 763 P.2d 761, 768 (Utah 1988). "Where there is a dispute over the authority of an agent to waive a policy term, the question is one of fact for the jury." *Id.* (citation omitted). Admittedly, Plaintiff has cited provisions in the policy and application to the effect that "[n]o agent may change this *policy* or waive any of its provisions."[6] Pl.Mem. Supp., Doc. No. 22, at Ex. A (Policy, Sec. 16, at 17) (emphasis in original). These provisions are inapposite. "[I]nsurance companies can be estopped from invoking these boilerplate nonwaiver provisions if the insured reasonably relied upon the agent's representations to the contrary." *Hardy*, 763 P.2d at 768 (citations omitted). "Agency law principles prevail, under these circumstances, over nonwaiver provisions." *Id.* (citation omitted). Viewing the record before the court in favor of the non-moving

---

**4.** Neither party has briefed Utah Code Ann. § 31A–21–105(5), which, in the court's reading, appears dispositive. Subsection (5), which under certain circumstances overrides subsection (2), provides as follows:

> If after issuance of a policy the insurer acquires knowledge of sufficient facts to constitute a general defense to all claims under the policy, the defense is only available if the insurer notifies the insured within 60 days after acquiring the knowledge of its intention to defend against a claim if one should arise.... For purposes of this subsection, an insurer has acquired knowledge only if the information alleged to give rise to the knowledge was disclosed to the insurer or its agent in connection with communications or investigations associated with the insurance policy under which the subject claim arises.

In the court's reading of subsection (5), if Defendant disclosed her medical information to Callister, then the Plaintiff has acquired knowledge of sufficient facts to constitute a general defense, assuming those facts were material misrepresentations and assuming Callister is Plaintiff's agent. Having obtained such knowledge, the Plaintiff had 60 days to notify the Defendant of such intent to raise a defense against a claim. The record reveals factual questions throughout the analysis of subsection (5). Were it before the court, the motion would be denied on the strength of this provision.

**5.** The court declines to address whether Plaintiff relied on the representations, because the parties do not dispute Plaintiff's reliance and such discussion is not required for the court's disposition.

**6.** *See also* Pl.Mem.Supp., Doc. No. 22, at Ex. A (Application at 2) ("[T]he agent or broker: is only authorized to submit the application and initial premium; may not change any application, policy, or receipt; and cannot waive any right or requirement.").

party, the court concludes that an issue of fact exists regarding whether Defendant reasonably relied on the representations of Plaintiff's agent that she need not disclose her full medical history on her application. Consequently, there remains a factual issue as to whether Defendant made misrepresentations on her application. Resolution of this issue would dispose of the matter but for Plaintiff's contention that Callister was not its agent.

■ Plaintiff does not dispute the general rule that "knowledge of an agent of the insurer, while acting within the scope of his or her authority, is imputed to the insurer, whether communicated or not." *Id.* at 767 (citations omitted). Plaintiff seeks to escape this general rule by arguing that Callister was not its agent and, even if he was an agent, he acted outside the scope of his agency. Pl.Reply Mem., Doc. No. 28, at 4. In support of this argument, Plaintiff relies on a provision in Callister's employment contract with Plaintiff that designates Callister as an independent contractor. *Id.* at 3.

Nonetheless, Plaintiff acknowledges that a party may be estopped from denying an agency relationship, if the parties have conveyed the impression of agency to an innocent third party. *See, e.g., Zion First Nat'l Bank v. Clark Clinic Corp.*, 762 P.2d 1090, 1098 (Utah 1988) (discusses agency by estoppel). Plaintiff argues that Defendant's husband testified in deposition that he knew Callister was an independent contractor.[7] This evidence does not meet Plaintiff's burden. The knowledge of De-

fendant's husband is insufficient proof of Defendant's knowledge. In fact, Defendant testified in deposition, "I thought I had an agent from Golden Rule. He said he represented Golden Rule so I just—I don't know that there is such a thing as a mortgage broker type of agent." Def. Mem Opp'n, Doc. No. 26, at Ex. A (Dep. of Gwendolyn Hughes at 30). Accordingly, there is a factual question on the issue of agency, which turns on Defendant's understanding of Callister's relationship with the Plaintiff.[8]

■ Plaintiff further argues that even if Callister was an agent he acted outside the scope of his agency, and therefore, his knowledge cannot be imputed to the Plaintiff. This argument has no merit. "[A]n insurer is generally bound by an incorrect answer entered onto the application by or at the direction of the agent following disclosure of the true facts by the applicant." *Hardy*, 763 P.2d at 767–68 (citations omitted). Were the court to accept Plaintiff's argument, the effect would be to place the burden on applicants to ascertain whether an agent is or is not acting beyond the scope of his authority. The court thinks this burden belongs with the insurer and refuses to place it elsewhere. This position was set forth by the Utah Supreme Court when addressing the relationship between an agent, an insurer, and an applicant:

> The insurance companies adopted and took the benefits of all [the agent's] conduct favorable to them. It seems quite inconsistent for them to accept the ad-

---

**7.** Plaintiff's Reply Memorandum cites to two attachments: (1) deposition testimony of Callister; and (2) deposition testimony of Defendant's husband. These were not attached to the filings.

**8.** Callister's status is not definitely established. The Utah Supreme Court has addressed the question:

> In general, one dealing with an insurance agency in ordinary course, need not concern himself with the extent of the authority of an employee in the office of the agent who undertakes to act for the agent. The apparent authority with which such employee is clothed by the agent renders him and his principal liable regardless of the actual limits of the authority of the employee.

*Farrington v. Granite State Fire Ins. Co.*, 120 Utah 109, 232 P.2d 754, 757 (1951). Although this provision does not fit on all fours with the present facts, it illustrates the lurking questions regarding the relationships between Callister and the Defendant and between Callister and the Plaintiff. Notwithstanding the above quotation, the court notes that "'insurance agent' or 'agent' means a person who represents an insurer or insurers in soliciting, negotiating, or placing insurance." Utah Code Ann. § 31A–23–102(1)(a) (1991). The parties have neither briefed this provision, nor provided to the court sufficient information to merit a grant of summary judgment.

vantages of everything he did for their benefit and yet insist that they are not responsible for the knowledge he acquired about the [applicant] within the necessary and ordinary scope of his duties in handling the transaction ... It certainly would be casting an unreasonable burden upon a lay person to require him to inquire beyond the authority of [the agent] under the circumstances which were present here.

*Farrington v. Granite State Fire Ins. Co.*, 120 Utah 109, 232 P.2d 754, 756 (Utah 1951). Accordingly, Plaintiff cannot escape disclosures made to Callister on grounds that he acted outside the scope of his employment.

### C.

■ The above discussion is sufficient to dispose of this motion. Nevertheless, to clarify the record, the court will address the materiality issue. Defendant's position is that the alleged misrepresentations were not material, because they did not constitute the underlying basis for the claims. Plaintiff, however, argues that Defendant's alleged misrepresentations were material, because, even if the matters allegedly concealed did not constitute the basis for the claims submitted by Defendant, they would have been grounds for rejection of the original application. Pl.Mem.Supp., Doc. No. at 8.

Although no reported cases have interpreted materiality under the current statute,[9] the Utah Supreme Court has addressed materiality in cases under previous statutes. These cases are instructive. The Utah Supreme Court has stated that "the concealment or misrepresentation by the insured ... is material to the risk assumed by the insurer, even though the insured's death or injury results from other causes." *Berger*, 723 P.2d at 391. Although *Berger* was decided under the former statute, there is no reason to conclude that the analysis applied or the result reached would be significantly different under the present statute. Accordingly, the court concludes, as a matter of law, that materiality encompasses whether the insurer would have assumed the risk, even if the claim results from other causes. Phrased differently, if the alleged concealment constitutes grounds for rejection of the original application, then the alleged misrepresentation is material, even if it is unrelated to the claims submitted. *See Berger v. Minnesota Mut. Life Ins. Co.*, 723 P.2d 388, 391 (Utah 1986).

■ Notwithstanding our agreement with Plaintiff's statutory interpretation to this point, Plaintiff misses the mark. The issue before the court is not the relationship of the alleged concealment to the claim, but whether Plaintiff would have denied coverage had it known the complete facts:

[T]he materiality of a misstatement on an insurance application is a question of fact to be determined by the jury on the basis of an industry standard and not upon the insurer's assertion, made with the advantage of hindsight, that it would not have issued a policy had it known the truth.

> (a) fraudulent; or
> (b) material either to the acceptance of the risk, or to the hazard assumed by the insurer; or
> (c) the insurer in good faith either would not have issued the policy or contract ... or would not have provided coverage with respect to the hazard resulting in the loss, if the true facts had been made known to the insurer as required either by the application for the policy or contract or otherwise.

Utah Code Ann. § 31–19–8(1) (1974) (replaced by Utah Code Ann. 31A–21–105(1)(a) (1986)) (as cited by *Home Sav. & Loan v. Aetna Casualty & Sur. Co.*, 817 P.2d 341, 358 (Utah Ct.App.1991)).

---

**9.** The court found three cases citing Utah Code Ann. § 31A–21–105. Each of these cases recognized its enactment, but interpreted the predecessor statute. *See Home Sav. & Loan v. Aetna Casualty & Sur. Co.*, 817 P.2d 341, 358 n. 18 (Utah Ct.App.1991); *Hardy v. Prudential Ins. Co.*, 763 P.2d 761, 766 n. 6 (Utah 1988); *Berger v. Minnesota Mut. Life Ins. Co.*, 723 P.2d 388, 390 n. 1 (Utah 1986). Because the current provision was enacted recently, it has received almost no discussion in reported case law.

The predecessor statute, enacted in 1963, read as follows:

Misrepresentations, omissions, concealment of facts, and incorrect statements [in an insurance application] shall not prevent a recovery under the policy or contract unless:

*Prudential Property & Casualty Ins. Co. v. Mardanlou,* 607 P.2d 291, 293 (Utah 1980) (citations omitted).[10] The Utah Supreme Court has set forth the applicable test:

> [W]hether or not a misstatement in an application is material to the risk ... depends not on what the insurer or the insured may think about the materiality or the importance of the false information given or the true information withheld, but upon what those engaged in the insurance business, acting reasonably and naturally in accordance with the usual practice among insurance companies in such circumstances, would have done had they known the truth; that is, *whether reasonably careful and intelligent men would have regarded the facts as substantially increasing the chances of the happening of the event insured against so as to cause rejection of the application.*

*Burnham v. Bankers Life & Casualty Co.,* 24 Utah 2d 277, 470 P.2d 261, 263 (1970) (citation omitted) (emphasis added by court). Plaintiff offers no evidence of the industry standards regarding the insurability of conditions like the Defendants. Accordingly, "materiality of the misrepresentation in this case [is] for the jury to determine on the basis of what a reasonable and prudent insurer would do in the industry." *Berger,* 723 P.2d at 392 (citing *Moore v. Prudential Ins. Co.,* 26 Utah 2d 430, 491 P.2d 227 (1971)). An issue of fact exists regarding whether the alleged concealment was material. This factual issue precludes summary judgment.

### III. CONCLUSION

Issues of material fact remain, including whether Callister was an agent of the Plaintiff or an independent contractor and whether the alleged misrepresentations were material. Given the uncertain record, the court cannot conclude as a matter of law that Plaintiff is entitled to summary judgment because genuine issues of mate-

rial fact remain. Accordingly the motion is denied. IT IS SO ORDERED.

---

**10.** Unlike the present case which involves alleged misstatements on an insurance application, the *Prudential* case involved the conceal-
ment of a prior cancellation of similar insurance. *Prudential,* 607 P.2d at 293.