CHARLES M. PARKER, ADMINISTRATOR OF THE ESTATE OF WILLIAM H. H. RADER, DECEASED, INTERVENER, ET AL. V. KNIGHTS TEMPLARS AND MASONS LIFE INDEMNITY COMPANY OF CHICAGO, ILLINOIS.

FILED NOVEMBER 5, 1903. No. 13,114.

1. **Review: THEORY OF CASE.** It is a settled rule of this court that it will dispose of a case on the theory on which it was presented to the trial court.

2. **Insurance: WAIVER.** A permanent waiver of a condition in a policy of insurance, would not be inferred from occasional indulgences shown a policyholder.

3. ———: ———. No implication of a waiver of the terms of a contract can arise from acts which may be construed as a compliance with such terms.

4. **Agency.** Where the agent of an insurance company undertakes to act for and on behalf of the assured, as to such acts, he is to be regarded as the agent of the assured and not of the company.

5. ———: PREMIUM PAYMENTS. Where an insurance agent, in taking the application for insurance, agrees with the assured to make the payment falling due on the policy for the assured, for a specified time, such agreement is not binding on the company, and in making payments in pursuance thereof, the agent acts on behalf of the assured and not for the company.

6. **Insurance Policy: WAIVER: DEFAULT.** A life insurance policy, by the terms of which the assured was required to pay a specified amount on the first of each month, provided, that if any such payment was not received at the Chicago office of the insurer, before 12 o'clock, noon, of the day it was due, the risk should be suspended, and such suspension should continue until the receipt of the payment at the Chicago office within thirty days of the date it was due; if not received within that time, or if the insured should die during such suspension, the contract of insurance should *ipso facto* terminate, although the amount of the payment had been forwarded during the life of the assured. The

insurer arranged with a bank at L., the residence of the assured, to receive such payments until the date they became due, and notified the assured of the authority of the bank to thus receive such payment. *Held:*

(1) That such arrangement operated as a waiver of the place of payment, and, that payments made to the bank, on or before the date they became due, would prevent a suspension of the risk, regardless of the date upon which such payments were received at the home office.

(2) That payment to the bank, in order to prevent a suspension, was required to be made on or before the date it fell due, and if made after that date, the risk would stand suspended until payment was received at the home office within thirty days of the date it became due, and during the lifetime of the assured; if not thus received, the insurance *ipso facto* terminated.

ERROR to the district court for Lancaster county: ALBERT J. CORNISH, JUDGE. *Affirmed.*

*Willard E. Stewart, Frank M. Tyrrell, George A. Adams* and *Samuel B. Iams,* for plaintiff in error.

*Walter J. Lamb, Joseph Wurzburg* and *Thomas Jefferson Graydon, contra.*

ALBERT, C.

This is an action on a life insurance policy issued by the defendant, a mutual company, on the life of Wm. H. H. Rader, in which the plaintiff, who at the time of its issuance was the wife of the assured, is named as the beneficiary. By a subsequent marriage, she took the name under which she prosecutes this action. The policy was issued in March, 1901, and the assured died June 15 of the same year. A copy of the policy is attached to the petition and the money consideration for its issuance, appearing on the face thereof, is $4.12, payable in advance, and a like sum on the first day of each month thereafter during the life of the policy. On the back of the policy, and as a part of the contract of insurance, is the following condition:

"5. If any payment is not received at the Chicago office of the insurer before twelve o'clock noon, central time, the

day it is due, the risk, under this contract, shall be suspended from that time and such suspension of the risk shall continue until the receipt of the payment at the Chicago office of the insurer, during the business hours of any day within thirty (30) days after the day the said payment becomes due. If the payment in default is not received at the Chicago office of the insurer, during the business hour of any day within thirty (30) days after the day it becomes due, or if the insured dies at any time during such a suspension of the risk, this contract shall be *ipso facto* terminated, although the amount of the payment may have been forwarded to the insurer before the insured's death; and if such payment is received at said office after his death, it shall be returned to the person who paid it or the insured's legal representative. After the second payment, the insurer will mail notices of payments becoming due, to the post office address of the insured which has been furnished to the insurer by him. and it is agreed that such notice mailed at Chicago at least fifteen (15) days before the day any payment becomes due, shall be sufficient notice thereof, and the insured then accepts the risk of any miscarriage of the mails. Delivery and acceptance of this policy shall be sufficient notice of the first monthly payment after the delivery of the policy."

Referring to the foregoing condition, the plaintiff in her petition alleges as follows:

"Plaintiff alleges that the defendant, after the execution of said policy and during the lifetime of the insured therein, waived the above provision and the requirement that the money be paid at its office in Chicago by noon of the day it was due, in that it constituted and appointed the First National Bank of the city of Lincoln, Nebraska, its agent to collect the premiums on the several and many policies it issued and had outstanding to citizens of said city of Lincoln and vicinity, and duly authorized and empowered said bank to collect said premiums at times and places other than as provided in the said policies, and to

so enable said bank to make said collections, sent notices to the said policyholders, including said Rader, requesting them and each of them to pay their said premiums to said bank, and for said purpose forwarded blank receipts to said bank to be filled out and delivered to said policyholders, including said Rader, as they made payment of said premiums from said policyholders, including said Rader, at times and places different from those mentioned in the said policies, to wit: at its place of business in the city of Lincoln, Nebraska, and at dates later in the month than the first day thereof, and the defendant, with full knowledge that said bank was taking and receiving said premiums from said policyholders, including said Rader, at dates later than the first day of the month, took and received said money as paid out of time, and credited the same to the said policyholders, including said Rader, and the defendant also authorized and empowered one J. E. R. Miller to take and receive said premiums from said policyholders, including said Rader, at times and places other than in said policy mentioned, and said Miller did at different and many times in the city of Lincoln, Nebraska, take, collect and receive from said policyholders, including said Rader, the premiums due from them and each of them to the defendant on said policies, and remit the same to the defendant at Chicago, Illinois, and said defendant knew that said Miller was so collecting, taking and receiving the same from said policyholders, including said Rader, as above stated, and remitting the same to the defendant at Chicago, Illinois, and knowing said facts and taking and receiving said remittances and crediting the same to the several policyholders as their several interests appeared, the defendant fully and completely waived the provisions of said policy requiring payment in advance at its office in Chicago, Illinois, before noon of the day it was due, central time.

"Plaintiff further alleges that said bank and said Miller and each of them was empowered to take and was accustomed to and did take from many of said policyholders,

including said Rader, the dues severally due from them, after noon of the day it was due, and long after said time, but within the thirty days for which such policy was claimed to be suspended, and did remit the same to the defendant, and the defendant took and received said money from said bank and Miller and each of them, during said thirty days of suspension, and kept and held the same and made no objection thereto, thereby ratifying and confirming the acts and conduct of the bank and said Miller in so doing, and thereby gave out to said policyholders that such payments were valid and sufficient and acceptable to it; that said Rader paid and caused to be paid to said Miller and tendered and caused to be tendered to said bank, all dues from him on the policy in suit herein, prior to his death, and within said thirty days limit or claimed suspension. The said First National Bank being the place designated by the defendant for said policyholders, including said Rader, to make such payment."

Upon grounds not necessary to mention, the administrator of the assured intervened. The petition of intervention also refers to the condition on the back of the policy, and in respect thereto alleges:

"By one of the conditions of said policy, it was provided that an assessment of $4.12 should be paid monthly on the first day of each succeeding month at the home office of the defendant at Chicago, Illinois, but this intervener alleges that said condition of the policy, as to time and place of payment of assessments, was waived by the defendant, and that after the issuance of said policy, the defendant directed said insured to thereafter make payments of such assessments at Lincoln, Nebraska, to the First National Bank of said city and to which bank said insured did habitually make such payments with the knowledge and consent of said defendant and without objection thereto.

"Said defendant further waived said condition of said policy as to time and place of payment of the several

maturing assessments therein provided for, by ratifying and adopting the acts of their local agent, J. E. R. Miller, at Lincoln, Nebraska, who, acting on behalf of the defendant, collected the payment which matured on the 1st day of June, 1901, from the insured, and remitted it to the defendant, where same was received and credit duly given the insured therefor, by the defendant, upon its books, and same retained by the defendant and is still so retained."

Neither the petition of the plaintiff nor that of the intervener contains any allegations, other than those hereinbefore set out, in regard to the payment of the monthly premiums required by the terms of the policy or any general allegation of performance of his part of the contract by the assured.

The answers to the plaintiff's petition and to the petition of intervention, so far as concerns the present inquiry, are substantially the same. Both open with a denial of "each and every allegation not herein expressly admitted," and admit the issuance of the policy as alleged in such petition. In respect to the condition on the back of the policy and the payment of the monthly premiums, both answers contain the following allegations:

"This defendant further avers that on, to wit, the 14th day of May, A. D. 1901, at the hour of 5:30 P. M., the said defendant mailed in the general post office in the city of Chicago, and state of Illinois, a notice addressed to the said William H. H. Rader at the street and number theretofore furnished to said defendant by the said Rader in the city of Lincoln, and state of Nebraska, and thereby notified the said Rader that a payment of $4.12 on the said policy would become due and payable on said first day of June, A. D. 1901.

"The defendant further says that, notwithstanding said notification, said Rader did not on June 1, before 12 o'clock noon, central time, pay to this defendant the said sum of $4.12 which the said Rader became and was obliged to pay to the said defendant, as hereinbefore al-

leged, and thereby the risk under the said policy was suspended from the time last mentioned and so continued to be suspended up to and including the hour of said Rader's death; and defendant further says that no payment of the amount thus in default was ever received at the Chicago office of the said defendant during the business hours of any day during the lifetime of the said Rader, and that the said Rader died during the suspension of the risk, and that the said policy or contract, if any, between the said Rader and this defendant, was *ipso facto* terminated and was not in force or effect at the time of his death, if at any time theretofore it had been in force."

In reply to such answers, both the plaintiff and intervener allege a waiver of the condition on the back of the policy, as to the time and place of payment of the premium, in substantially the same language as that hereinbefore quoted as a part of their respective petitions, and that, in pursuance of such waiver, the premium due June 1, 1901, was paid after that date but within thirty days thereof.

It appears from the evidence that the application for the policy in question was taken by one Miller, an agent of the company. At the time he took the application, he entered into an arrangement with the assured, whereby he agreed to advance such payments as should fall due from time to time, until the assured received a pension which he was expecting. In pursuance of this arrangement, Miller collected the admission fee from the assured and forwarded it to the defendant. It appears to have been the practice of the defendant to forward receipts for the payments falling due each month from its members in the city of Lincoln to the First National Bank of that city, and in addition to the notice required by the conditions of the policy to be given to members of payments falling due, to include the following:

"For your convenience your receipt has been sent to the First National Bank of your place, where you can get

it until said date (the date the payment became due), on payment of the amount due. After that date, if unpaid, it will be returned to this office, and you will be carrying your own risk."

The bank's instructions were in writing and among them was the following:

"Each has been notified that you will have these receipts for collection until (the date the payment became due) and after which date, remit collections made and return all unpaid receipts."

In pursuance of his, agreement with the assured, Miller made the payments falling due on the policy April 1 and May 1, 1901, on the third and fourth days of those months, respectively, to the bank, in accordance with the practice above mentioned. Afterwards, and during the same month, and while the assured was living, Miller purchased a draft for the amount and transmitted it to the defendant by mail. An attorney for the assured agreed to reimburse him for the amount thus transmitted. It is conceded that the remittance was received by the defendant during the month of June, and within 30 days of the date which, by the terms of the policy, it was required to be paid. But whether it was received during the lifetime of the assured was one of the issues in the case. The remittance was rejected by the defendant, on the ground that it was not received during the lifetime of the assured, and returned to Miller in the form of a check. He returned it to the company, and it appears to have been returned to him, who produced it on the trial, where the defendant offered to pay it, and deposited the amount thereof in court for the benefit of the person entitled thereto.

At the conclusion of the evidence the court directed a verdict for the defendant, and from a judgment rendered on such verdict, the plaintiff and intervener severally prosecute error to this court.

At this stage of the litigation, there is no contest between the plaintiff and the intervener; they make com-

mon cause against the defendants; for the sake of brevity, we shall treat the arguments of each as made by both, and refer to both by their title in this court—the plaintiffs.

From the foregoing statement it will be seen that the defendant resists payment on the ground that the payment which by the terms of the policy was required to be paid at Chicago before noon of June 1, 1901, was not paid until after that date, and until after the death of the assured, and for that reason no recovery can be had, in view of the condition on the back of the policy hereinbefore set out.

The plaintiffs, on the other hand, insist that the payment was in fact made before the death of the assured and before the policy had lapsed, and also insist that the defendant had waived the time and place of payment.

One contention of the plaintiffs is based on the following allegation in the defendant's answer:

"The defendant further says that, notwithstanding said notification, said Rader did not on June 1, before 12 o'clock noon, central time, pay to this defendant the said sum of $4.12."

Their contention on this point is best shown by the following taken from their brief:

"Defendant's general denial is waived, modified and controlled by the special plea which, being *in hæc verba,* tenders no issue. It is an admission of payment and only puts in issue the manner of it, a fact which is immaterial and about which there is no dispute. Defendant says payment was not made in Chicago on June 1, and we, in substance, make the same allegation."

This contention conflicts with the theory upon which the case was presented to the trial court. The plaintiffs made no claim that payment had been made within the time required by the terms of the contract. On the contrary, by their pleadings as well as by the evidence, it is impliedly admitted that the assured, for some time at least, stood suspended because of nonpayment, unless there had been a waiver of the time of payment by the

defendant. That condition, having been shown to exist, would be presumed to continue until the contrary was shown. To rebut that presumption, the plaintiffs pleaded a waiver of the time and place of payment, and attempted to show due payment before the death of the assured and in time to avoid the suspension. It is a settled rule of this court that it will dispose of a case on the theory upon which it was presented to the trial court. That rule of itself, without going into other questions, is sufficient to dispose of the plaintiff's contention.

The plaintiffs insist that there is evidence tending to show that payment of the amount due June 1, 1901, was actually received by the defendant, at its office in Chicago, before the death of the assured. We do not think so. Miller, by whom the plaintiffs sought to show that fact, testified, in effect, that he had no recollection as to the exact date of making the remittance, except that it appeared from a memorandum made by him to have been June 13, 1901. When he entered the memorandum, or whether it correctly showed the date of the transaction, was not shown. But the remittance was mailed at Lincoln, and the receiving stamp shows that it was received at the post office at that place, June 14, 1901, at 8 : 30 in the evening. It was received at the post office in Chicago between 9 : 30 and 10 o'clock in the evening of the following day. The next day was Sunday, and the evidence on the part of the defendant is clear and positive that it was not received at its office until June 17, 1901, two days after the death of the assured. The evidence on this point we think admits of no other inference than that the assured was dead when the remittance reached the Chicago office.

A considerable portion of the argument in this case is directed to the question of waiver, that is, whether the defendant had waived the condition as to the time and place of the payments or monthly dues. As to the time of payment, it will be seen from an examination of the condition of the policy set out that in case payment was not

made before 12 o'clock, noon, the day it became due, the
policy became suspended, and such suspension should
continue, until the receipt of the payment at the Chicago
office during the business hours of some day, within thirty
days after the date the payment became due.  If the pay-
ment in default was not thus received, or if the assured
died during such suspension of the risk, the contract,
*ipso facto*, terminated, although the amount had been for-
warded to the defendant before the assured's death.  There
is ample evidence in the record that the defendant re-
ceived payments after the date upon which they fell due,
and within thirty days after that date.  But the evidence
does not show a waiver of the conditions of the policy in
regard to the time of payment.  On the contrary, it is
strictly in accordance with those conditions.  By the
terms of the condition the assured had the right to make
such payments at any time within thirty days after they
fell due, subject to the penalty of suspension while in de-
fault.  The question then of a waiver of the time of pay-
ment is not in the case, because there is no evidence tend-
ing to establish it.

As to the place of payment, the first contention of the
plaintiffs is that the agent, Miller, was at least impliedly
authorized to collect the payment at Lincoln, and that
the condition as to the place of payment was thereby
waived.  In support of this contention, we are referred to
the agreement between Miller and the assured, whereby
the former undertook to pay the monthly dues for the
latter for some time, and the payments made by Miller in
pursuance of that agreement.  We are also referred to evi-
dence showing that Miller had paid the dues of another
policyholder to the First National Bank on one or two
occasions, and at least once had remitted such dues directly
to the defendant's office in Chicago.

So far as the agreement between the assured and Miller
is concerned, it was theirs exclusively.  In making pay-
ments in pursuance thereof, Miller acted for the assured
and not as agent for the defendant, and there is nothing

either in the agreement or the payments made in pursuance of it to indicate even remotely that the defendant had authorized payment to be made to Miller in Lincoln instead of to itself at Chicago as required by the terms of the contract. The assured's monthly dues were never paid to Miller but always by Miller to the bank which had restricted authority to collect for the defendant.

So far as the transactions between Miller and the other policyholder in regard to the payment of dues are concerned, it is not clear whether he was acting for the defendant or for the policyholder; the fact that he paid a part of them to the bank authorized to receive them instead of remitting direct to the defendant, would tend to show the latter. But assuming that in those instances he was acting for the defendant, the evidence on that point shows only an occasional indulgence, as to the place of payment, to one policyholder. Had such indulgence been shown to the holder of the policy in suit, himself, it could not be construed as a permanent waiver as to the place of payment. *Thompson v. Knickerbocker Life Ins. Co.*, 104 U. S. 252; *Mandego v. Centennial Mutual Life Ass'n*, 64 Ia. 134; *Sweetser v. Odd Fellows Mutual Aid Ass'n*, 117 Ind. 97, 101; *Marston v. Massachusetts Life Ins. Co.*, 59 N. H. 92; *Smith v. New England Mutual Life Ins. Co.*, 63 Fed. 769; *Haydel v. Mutual Reserve Fund Life Ass'n*, 104 Fed. 718. *A fortiori*, such indulgence should not be construed as a permanent waiver when shown to another person.

Another contention of the plaintiffs is, that the defendant having authorized the bank to receive payments at Lincoln, the condition of the policy, as to the place of payment, was thereby waived, and, consequently, the court erred in rejecting the evidence offered by them to show a tender of the payment falling due June 1, 1901, made by Miller, on behalf of the assured to the bank, after that date and before the date of his death, was a good tender. That the defendant, by authorizing payments to be made to the bank, did thereby waive the place of payment is obvious. But an examination of the written authority of

the bank to receive such payments, and of the notice to the policyholders that payment might be made to it, shows the extent of such waiver. By the terms of the policy, to avoid suspension, payments were required to be made at the office of the company, in Chicago, before 12 o'clock, noon, of the day they fell due. The notice to the policyholders of the authority of the bank to receive payment, informed each of them, in effect, that his dues could be paid to the bank until the date of payment fixed by the terms of the contract, and that after such date, if unpaid, the receipt therefor, furnished by the defendant to be delivered to him upon making payment, should be returned to the defendant, and that thereafter he would be carrying his own risk. The authority of the bank, as to the time during which it might receive payments, was correspondingly limited. The effect, then, of the waiver was that the policyholders could avoid suspension by payment to the bank, within the time specified in the notice, regardless of the time the payments thus made were received at the home office of the defendant. In other words, the waiver, as to the place of payment, extended only to such payments as were made within the time specified in the notice.

But the plaintiffs argue, that the express waiver, shown by the authority given to the bank to collect the dues, and the notice to the policyholders that payment could be made to the bank, was impliedly extended by the course of dealing between the policyholders and the defendant. This argument is based on the fact that the previous payments of the assured, as well as those of some other policyholders, had been made to the bank after the date, specified in the notice, for making such payments. We do not think such implication arises from those circumstances. By the express terms of the policy, if the payments were not made at the time and place therein specified the risk was suspended. But such suspension might be interrupted by the payment of the amount delinquent, at the home office at any time during the life of the as-

sured and within 30 days of the date such amount became due by the terms of the policy. When such amount was received at the home office, within that time, whether through the bank or directly from the assured, it operated to interrupt the suspension of the risk, and the defendant had no right, under the terms of the contract, to reject it. No implication of a waiver of the terms of a contract can arise from acts which are in strict accordance with such terms. The acceptance, therefore, by the defendant, of dues collected by the bank, after the time it was authorized to collect them, was not a recognition of the right of the assured to make them at Lincoln instead of Chicago and thereby arrest the suspension of the risk regardless of the time such payments were received at the home office, but of the right of the assured to avoid the suspension of the risk in the manner provided by the terms of the contract. Upon the failure of the assured to make the payment falling due June 1, 1901, to the bank at Lincoln, or to the defendant at its home office, on or before that date, he stood suspended and, by the express terms of the policy, such suspension was to continue until the receipt of the payment at the home office within thirty days of the date it became due and during his lifetime. There being no waiver of this provision, payment to the bank within that time would not interrupt the suspension until such payment was actually received at the home office. The evidence was properly rejected.

Another claim put forward by the plaintiffs is that the defendant retained the payment remitted by Miller, on June 14, 1901, until the time of trial, and thereby ratified his acceptance of the payment at Lincoln. As we have seen, in making payment for the assured, Miller was simply carrying out a personal arrangement between himself and the former. In those matters, he was acting for the assured, and the payment remitted by him June 14, 1901, is to be viewed in precisely the same light as though it had been made by the assured himself. The evidence shows it was not received at the home office until June 17,

1901, and until after the assured had died; that as soon as the defendant learned of the death of the assured, it returned the remittance to Miller, in the form of a check; that he returned the check to the defendant, who immediately returned it to him. It does not appear that the check was ever presented for payment, and, upon its production at the trial, the defendant, as we have seen, tendered the amount of it and deposited such amount in court for the use of those entitled thereto. It will be seen, therefore, that instead of a ratification or an acceptance and retention of the payment after it had notice of the death of the assured, the defendant promptly returned the payment to the party who, acting on behalf of the assured, had remitted it. A different question might arise had Miller been acting for the company in making the remittance.

Complaint is made of the rejection of evidence showing that the bank received payments after the first of the months, and that it was its practice to retain the list, showing the payments due, for collection until the 12th day of the month, and then report to the defendant showing the collections made and the time they were received, and that it was also its practice to send out collectors to make such collections. From what has already been said in regard to the evidence offered to show a tender to the bank, this evidence is clearly immaterial and it was not error to reject it. Complaint is also made of the rulings of the court excluding the answers to questions propounded on cross-examination. The answers were properly excluded, because the questions were not directed to matters brought out on the direct examination. Besides, in the view we have taken of the case, had such answers been received, they could not have changed the result.

Other errors are assigned, but we think they are disposed of by what has already been said.

It is recommended that the judgment of the district court be affirmed.

GLANVILLE and BARNES, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.