431 P.2d 910

**The O. S. STAPLEY COMPANY, an Arizona corporation, Appellant,**

v.

**Samuel Burr LOGAN and Helen Logan, husband and wife, doing business as Logan Drilling Company, Appellees.**

No. 1CA–CIV 384.

Court of Appeals of Arizona.

Sept. 22, 1967.

Rehearing Denied Oct. 16, 1967.

Review Denied Nov. 21, 1967.

Jennings, Strouss, Salmon & Trask, by Charles E. Jones, Phoenix, for appellant.

Minne & Sorenson, by George Sorenson and John W. Rood, Phoenix, for appellees.

DONOFRIO, Judge.

This is an appeal from an involuntary dismissal entered in favor of the defendant-appellee at the close of appellant-plaintiff's case. The parties will be designated as they were in the trial court.

First we consider plaintiff's contention that the trial court erred in not making specific findings as required by Rules 41(b) and 52(a), Arizona Rules of Civil Procedure, 16 A.R.S. The pertinent provisions of the rules read:

"41(b) Involuntary dismissal; * * * After the plaintiff, in an action tried by the court without a jury, has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of

the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence. If the court renders judgment on the merits against the plaintiff, the court shall make findings as provided in Rule 52(a). * * *"

"52(a) In all actions tried upon the facts without a jury or with an advisory jury, the court, if requested before trial, shall find the facts specially and state separately its conclusions of law thereon and direct the entry of the appropriate judgment. * * *"

We agree that Rule 41(b) demands that the trial court make findings of fact and conclusions of law when dismissing a case at the close of plaintiff's evidence. Joseph v. Tibsherany, 88 Ariz. 205, 354 P.2d 254 (1960).

The trial court entered the following order:

"COURT FINDS that plaintiff has not sustained its burden of proof as required by law by preponderance of the evidence; that the contract was entered into by Ed Hallmark with the plaintiff; that Hallmark did not have actual authority to so do and that he did not have implied authority to so do and that plaintiff has failed to carry its burden of proof by the evidence presented to the Court, the Court considering that all of the witnesses called were witnesses of the plaintiff, except the defendant, and bound by them.

"IT IS THEREFORE ORDERED for Judgment in favor of the defendants Samuel Burr Logan and Helen Logan, his wife, and against the plaintiff, O. S. Stapley Co., each party to bear his own costs."

█ Although we would not consider the order and judgment as a model form to be used in complying with the requirements of the Rules of Civil Procedure, we would, nevertheless, hold that plaintiff not having made timely objection or moved to amend or make additional findings as required by Rules 52(a) and 52(b), Rules of Civil Procedure, it cannot now raise this issue on appeal, there being a substantial compliance with the rules.

We turn now to the point of whether or not the trial court was correct in granting the involuntary dismissal after hearing the plaintiff's evidence.

█ Summarizing the facts in the light most favorable to the plaintiff, Markel v. Phoenix Title & Trust Co., 100 Ariz. 53, 410 P.2d 662 (1966), we find that Ed Hallmark, purporting to be agent for the defendant (Logan Drilling Company), began negotiations with plaintiff (O. S. Stapley Company) to lease some heavy equipment, with an option to buy. The equipment consisted of a backhoe, tractor, and loader. Although Logan was an old customer of The Stapley Company, it required a credit statement and provided forms to be filled out and returned in order to establish Logan's financial standing. At this time Samuel Logan was unable to maintain his business himself because of health reasons and had left it in the hands of certain employees—his office manager, Theodore Ebert being one of these. When the financial forms were returned, Theodore Ebert's signature was on the form which, among other statements, named Ed Hallmark as one with authority to make purchases.

The testimony also disclosed that Hallmark and Logan had contemplated an arrangement whereby they would act together on securing contracts for work other than drilling. The equipment leased was used to fulfill a contract taken out in the name of Logan and secured under his bond. Ed Hallmark had an office in the building used as an office by Logan Drilling Company and there was no sign or designation which would indicate that Hallmark was not part of Logan Drilling Company.

Also admitted in evidence were two receipts issued to Logan Drilling Company from Stapley for the first two payments on the lease contract, as well as the following

letter, written and signed by Ebert at the instruction of Logan:

"July 3, 1962

The O. S. Stapley Company
3003 West Thomas Road
Phoenix 17, Arizona

Gentlemen:

On advice of Mr. Dutton we are hereby submitting this letter to inform you that the backhoe on lease—purchase agreement has been returned to you. Mr. Logan wishes to assure you that he had no knowledge of Mr. Hallmark returning the hoe at the time and in the manner he did. He also wishes you to know he was never fully informed by Mr. Hallmark as to terms and conditions under which the backhoe was obtained.

As you know Mr. Logan has not been real active in the business since last November when he suffered a serious accident and he left the detail of many things to Mr. Hallmark's judgement, (sic) as it turned out, much to his sorrow.

We are terminating this thing as fast as possible and at this writing are awaiting and (sic) answer from Mr. Hallmark as to when he will meet with us to draw this to a satisfactory conclusion for everyone concerned.

We hope this meets with your approval.
 Yours very truly,

 LOGAN DRILLING COMPANY
 /s/ Theodore P. Ebert
 Theodore P. Ebert
 Office Manager. "

At the trial Logan denied that Hallmark had any authority whatever to act on his behalf.

The plaintiff's appeal alleges that Hallmark must be found to have possessed either 1) express, 2) implied, or 3) apparent authority, and failing to find any one of these, that Logan had 4) ratified the acts after Hallmark had entered into the contract. Since we find it necessary to reverse and remand for a new trial because of the issues on implied authority alone, we find it unnecessary to rule on plaintiff's other contentions and therefore will deal only with this aspect of the case.

 One of the established rules of agency law is that a principal is not liable on contracts which he has in no way authorized. Brutinel v. Nygren, 17 Ariz. 491, 154 P. 1042, L.R.A.1918 F, 713 (1916). However, also well established in the law is the proposition that a principal cannot escape liability by leaving his business in the hands of agents, then denying their authority to act for him. Luhrs v. Valley Ranch Co., Inc., 27 Ariz. 306, 232 P. 1014 (1925).

2 C.J.S. Agency § 23 states as follows:

"The relation of agency need not depend upon express appointment and acceptance thereof, but may be, and frequently is, implied from the words and conduct of the parties and the circumstances of the particular case. [citing Arizona case Arizona Storage and Distributing Co. v. Rynning, 37 Ariz. 232, 293 P. 16 (1930) ]. If, from the facts and circumstances of the particular case, it appears that there was at least an implied intention to create it, the relation may be held to exist, notwithstanding a denial by the alleged principal, and whether or not the parties understood it to be an agency. On the other hand, where it does not appear that there was any express or implied intention to create the relation, it will not be held to exist, as where it appears that the agent was acting on his own behalf.

"An implied agency must be based on facts for which the principal is responsible; they must, in the absence of estoppel, be such as to imply an intention to create the agency, and the implication must arise from a natural and reasonable, and not from a forced, strained, or distorted construction of them. They must lead to the reasonable conclusion that mutual assent exists, and be such as naturally lead another to believe in and to rely on the agency. The existence of the relation will not be assumed."

■ Plaintiff under the facts has presented a prima facie case. Logan, albeit due to his illness, had allowed his business to continue in the hands of his employees. His absence from the business was to be for some period of time. From his actions of delegating authority to Ebert and expecting him, as office manager, to carry on the normal business of the Logan Drilling Company, can be implied the authority to Ebert and Hallmark to enter into the contract with Stapley.

■ Many Arizona cases have held that agency does not have to be proved by direct testimony. The fact of agency is susceptible to proof, as is any other fact, and may be established from circumstances, such as the relation of the parties to each other and to the subject matter. Little v. Brown, 40 Ariz. 206, 11 P.2d 610 (1932); Litchfield v. Green, 43 Ariz. 509, 33 P.2d 290 (1934).

In applying the foregoing law to the facts of this case, we believe that it would not be straining or distorting the facts to find implied in the circumstances of this particular case the authority for Ebert to sign a credit statement for Stapley Company and the right of Stapley to rely on its assertion that Hallmark was authorized to make purchases on behalf of Logan Drilling Company. At the trial Logan also admitted that he "never was too good at bookkeeping" and left such things in Ebert's hands.

On the basis of the same evidence, the trial court would have been justified in also finding that Ebert was clothed with apparent authority to inform Stapley that Hallmark was authorized to make purchases on behalf of Logan Drilling Company. 3 Am.Jur.2d Agency § 73 defines apparent authority as follows:

"The liability of the principal for the acts and contracts of his agent is not limited to such acts and contracts of the agent as are expressly authorized, necessarily implied from express authority, or otherwise actually conferred by implication from the acts and conduct of the principal. So far as concerns a third person dealing with an agent, the agent's 'scope of authority' includes not only the actual authorization conferred upon the agent by the principal, but also that which has apparently been delegated to him. Apparent authority, or ostensible authority, as it is also called, is that which, though not actually granted, the principal knowingly permits the agent to exercise, or which he holds him out as possessing. In effect, therefore, an agent's apparent authority is, as to third persons dealing in good faith with the subject of his agency and entitled to rely on such appearance, his real authority, and it may apply to a single transaction, or to a series of transactions."

■ In the case of Canyon State Canners v. Hooks, 74 Ariz. 70, 243 P.2d 1023 (1952), the Court in essence agreed, holding that an ostensible agent is one where the principal has intentionally or inadvertently induced a third person to believe that such a person was its agent, although no actual or express authority was conferred on him as agent. See also Lois Grunow Memorial Clinic v. Davis, 49 Ariz. 277, 66 P.2d 238 (1937).

■ In Lux Art Van Service, Inc. v. Pollard, 344 F.2d 883 (1965), a ninth circuit case arising in Arizona, apparent authority was defined as being not authority at all, but a power to effect the principal's affairs arising not from consent, but from the principal's negligent omission or acquiescence in the agent's activities.

In the present case Ebert was acting within his apparent authority conferred on him by Logan. Logan allowed him to make financial statements and, especially while Logan was unable to tend his business himself, he gave Ebert a free hand in office matters.

■ Through Logan's own negligence or omission in allowing his agent, Ebert, to run the business in his (Logan's) absence, Hallmark was expressly represented as one with authority to contract purchases. The liability of a principal upon contracts made

by an agent acting within his apparent authority is the same as if the act were authorized. Restatement of Agency 2d, § 159.

In considering the facts favorable to plaintiff, we therefore find that the trial court erred in dismissing the action, and the case is remanded for a new trial.

CAMERON, C. J., and STEVENS, J., concur.