487 P.2d 311

**Onel J. BARNETT and Evelyn I. Barnett, his wife, Plaintiffs and Respondents,**

**v.**

**STATE AUTOMOBILE & CASUALTY UNDERWRITERS, a corporation, et al., Defendants and Appellants.**

**No. 12264.**

Supreme Court of Utah.

July 8, 1971.

Raymond M. Berry, of Worsley, Snow & Christensen, Salt Lake City, for defendant-appellant.

John L. Black, of Rawlings, Roberts & Black, Salt Lake City, for plaintiffs-respondents.

ELLETT, Justice:

State Automobile & Casualty Underwriters appeals from a judgment based on a jury verdict wherein it was held liable for a loss by fire. The policy of insurance was issued and signed by Diversified Insurance Agency for and on behalf of Guaranteed Surety Insurance Company. The policy was subsequently assumed by the appellant.

The policy by its terms was effective from October 1, 1964, to October 1, 1967. A fire destroyed the insured property on October 19, 1967, and this action was brought to recover on the policy.

In answer to an interrogatory, the plaintiff explained why the policy was in full force and effect at the time of the fire:

By custom and practice during the past twenty years, the policy would automatically be renewed and we would be billed either prior to the expiration date

or subsequent to the expiration date. Since this arrangement had been made and carried on by the agent for the insurance company, then the insurance company is bound by it.

The court permitted a witness to testify that it was a custom of soliciting agents to notify clients thirty days prior to the expiration of their insurance policies; that the insurance in the area was, with only two exceptions, solicited by independent agents who could place the insurance with any company they chose, and if they ceased to work with an insurer, the policyholders of that company were the clients of the agents; that the two exceptions were State Farm Insurance Company and Allstate Insurance Company; that it was the custom of those two companies to notify their insureds prior to expiration date; and that he had never heard of the appellant prior to the present action and knew nothing about its methods of doing business.

The policy in question here was originally placed by a soliciting agent with another company and on February 28, 1966, was assumed by the appellant herein.

Utah has a statute [1] which provides:

No insurer or its agent, nor any solicitor or broker shall make any contract of insurance or agreement as to such contract, other than is plainly expressed in the policy issued thereon. Any such understanding or agreement not so expressed shall be invalid.

The policy in question had a provision as follows:

No permission affecting this insurance shall exist, or waiver of any provision be valid, unless granted herein or expressed in writing added hereto. * * *

Furthermore, Section 31–19–26, U.C.A. 1953 (Replacement Vol. 4), prevents any modification of an insurance contract unless it is in writing.

In Counts II and III of their second amended complaint, the plaintiffs charged the soliciting agent and his assigns with negligence in failing to notify pursuant to custom. Those two causes of action are not before us here. We are dealing only with the claim that the fire loss is covered by the policy written by another and thereafter assumed by the appellant.

A statement of the law is found in 43 Am.Jur.2d, Insurance, Sec. 204, p. 261, as follows:

* * * In the absence of express authority, an insurance agent has no apparent authority to make a contract for insurance to run from year to year for an indefinite period in the future. * * *

In regards to the effect of usages and customs on a contract, the law is stated in

1. Sec. 31–19–18, U.C.A.1953 (Replacement Vol. 4).

55 Am.Jur., Usages and Customs, Sec. 35, p. 296, as follows:

> * * * The office of a trade custom or usage is to explain what otherwise would be inexplicable in the meaning and intention of the parties, on the theory that they knew of its existence and contracted with reference to it, and it is not admissible where there is no ambiguity in the contract and it contains no technical terms or expressions peculiar to any avocation or locality used [sic] in the contract. * * *

1 Couch on Insurance, 2d Ed., 757, Sec. 15:61, states:

> If the contract is stated in clear, positive, and unambiguous terms, usage or custom cannot be permitted to vary or contradict the terms used. * * *

In the case of Thomas v. Guarantee Title & T. Co., 81 Ohio St. 432, 91 N.E. 183, 26 L.R.A.,N.S., 1210 (1910), the question of the effect of usage and custom on the liability of an abstracter was involved. It was there held that usage or custom could not create a contract or a liability where none otherwise existed, but could only be used to explain or aid in the interpretation of a contract or liability existing independently of it.

The Supreme Court of Hawaii had before it the question of the duty of an insurer to give notice of expiration of an insurance policy in the case of Kapahua v. Hawaiian Insurance and Guaranty Company, 50 Haw. 644, 447 P.2d 669 (1968). At page 671 the court said:

> In modern times automobile accidents occur daily. It may well be in the public interest that automobile insurance policies should not lapse due to forgetfulness on the part of the insured, or inconsistent action of insurers and that a duty be imposed upon the insurers to give notice of expiration before terminating the current policies. But, unless expressly written in the insurance contract, such duty may only be imposed by the legislature.

■ Where a soliciting agent promises a customer that he will notify him before the contract of insurance expires, or where, as in this case, he permits a custom and usage to arise which requires him to give the insured notice of the expiration date, he is acting as the agent of the insured and not the insurer, since such an agent may place the next term of insurance with another company if he cares to to do so.[2]

■ The contract in the matter before us was clear and unambiguous and complied with the statutory requirements. It plainly stated that the policy would expire on October 1, 1967. By its terms it did ex-

---

2. Dohlin v. Dwelling House Mut. Ins. Co. of Lincoln, 122 Neb. 47, 238 N.W. 921 (1931); Parker v. Knights Templars, etc., 70 Neb. 268, 97 N.W. 281.

pire on that date, and the appellant was not liable under the assumed contract to pay for a loss that occurred thereafter.

The trial court erred in instructing the jury in substance that it should return a verdict against the appellant if it should find by a preponderance of the evidence:

1.  That prior to October 1, 1967, there existed a custom whereby agents would renew insurance upon expiration of the terms;

2.  That Diversified Insurance Agency knew of the custom;

3.  That appellant was on October 1, 1967,

    (a) represented by Diversified Insurance Agency, or

    (b) had failed to give plaintiffs notice of the termination of agency of Diversified Insurance Agency;

4.  That on or before October 1, 1967, the appellant or its agent failed to renew the policy in accordance with the custom or to give notice that it did not intend to do so; and

5.  That plaintiffs reasonably relied upon such custom and as a result thereof suffered damage.

The judgment is reversed with directions to enter an order granting appellant's requested instruction for a directed verdict. Costs are awarded to the appellant.

CALLISTER, C. J., and TUCKETT and HENRIOD, JJ., concur.

CROCKETT, Justice (dissenting).

It is appreciated that this case is not without difficulty. Nevertheless, I believe that there was a sufficient foundation in the evidence to justify submitting the matter to the jury on the basis of the instruction, which is fairly and properly set forth in the next to the last paragraph of the main opinion.[1] It will be seen therefrom that the trial court carefully set forth the prerequisites to finding responsibility upon the defendant. Inasmuch as both parties have had a full and fair opportunity to present their evidence and their contentions, and the jury has so found the facts, and the trial court has also given his approval, I think the matter should not now be approached from a different point of view and the whole case ripped asunder by reversal of the judgment.

In that connection it seems appropriate to again state a doctrine of review about which we do not disagree in the statement, but about which we do frequently disagree in application: that it is the duty of the reviewing court to assume that the jury believed those aspects of the evidence and

1. Seavey v. Erickson, 244 Minn. 232, 69 N.W.2d 889, 52 A.L.R.2d 1144.

drew whatever reasonable inferences they could fairly deduce therefrom in the light favorable to support their verdict; and more specifically applicable here: that the court should not pass over lightly nor ignore any aspect of the evidence important to the verdict reached by the jury.

The plaintiffs had, for approximately 18 years, carried fire insurance on their home through policies obtained from an insurance man, Noble Kimball. During all of this time the custom and practice had been that just prior to the expiration of a policy, Mr. Kimball would notify the plaintiffs, either by mail or in person; and would keep the insurance in effect by renewal, and bill the plaintiffs and they would pay the premium. A few months before the policy in issue here was written, Mr. Kimball advised the plaintiffs that he was retiring and introduced them to Richard Salisbury, an employee of defendant Diversified Insurance Agency, who would be taking over his business. Mr. Salisbury assured them that the insurance would be handled exactly as it had been in the past. He obtained the policy in question for the plaintiffs. It covered from October 1, 1964, to October 1, 1967. On October 19, 1967, the fire occurred which damaged plaintiffs' home. The plaintiffs had received no notice concerning the expiration of the policy, and received no word about

it until four days after they phoned Diversified to notify them of the fire loss.

The law relating to contracts is a vast field of many rules wherein one may be selected as seeming to apply to either side of practically any controversy. Such rules are of course all right *if* properly applied to the facts. But the matter of importance is to see that the rule selected and applied as controlling is so specifically applicable to the facts that it does justice between the parties; and this is the consideration which transcends all others in determining the correct rule to be applied.

With respect to insurance that is periodically renewed by the payment of a premium, there is abundant authority supporting the rule that where an established custom between the insurer and the insured leads the latter to believe that he will be notified before his renewal premium is due, and no notice is given, the insurer will be estopped from asserting the lapse in the policy when claims are presented to cover losses incurred after the term of the policy.[2] A leading case on this issue is Seavey v. Erickson,[3] wherein the court stated:

\* \* \* where it has been established that it is the custom and the practice of the insurer to give notice of the time for payment of a renewal premium and

2. Couch on Insurance 2d, Sec. 32:369 et seq. and authorities therein cited.

3. Footnote 1 above.

knowledge of such custom is acquired by an insured in dealings with the insurer, *the insured has a right to rely on such notice, and, in the absence thereof, the policy may not be terminated or forfeited without giving the insured some notice that such custom has been abandoned.* [Emphasis added.]

This court has approved a similar rule in a case involving a personal accident insurance policy: [4] that where through the practice of accepting past due premium payments, the insurer has led the insured to believe that the policy will not immediately be forfeited for the nonpayment of premiums, the insurer may not disclaim its liability under the policy for claims arising during a period when a premium was due. Although I realize there are differences between fire and accident insurance policies, it is of little or no consequence to the insured whether an existing policy is continued or extended, or a new policy of the same import is written. His objective is to keep insurance coverage and he does this through the insurance man whom he assumes to have specialized knowledge and who is better able to handle the matter than himself. It is for this reason that the plaintiffs here, just as in the Seavey case, supra, could claim the benefit of relying upon the practices of the insurer.

The accuracy of the statement in the main opinion that the insurance man is acting as the agent of the insured and not of the insurer depends upon the facts of the given case. He is often acting as agent for both. There was adequate proof presented concerning the facts vital to holding the company responsible for the acts of the insurance agent to provide a reasonable basis for the view necessarily taken by the jury in imposing responsibility upon the defendant company. In that connection, it is to be kept in mind that it was the insurance company who selected the agent and entrusted the handling of its business to him. It was its purpose to take the benefits of his conduct favorable to the company by issuing policies and collecting premiums. Accordingly, it should be bound by his conduct in all aspects thereof reasonably apparent to and relied upon by the customer, the same as if the company had acted through any of its officers; and it should not be permitted to take the inconsistent position of accepting the advantages of what he would do for them, but insist that they are not responsible for any unfavorable aspect of his doing business with the customers. [5] Whatever other limitations there may have been upon the agent's authority were effective only as between him and the company, unless it was

4. Loftis v. Pacific Mutual Life Ins. Co., 38 Utah 532, 114 P. 134.

5. O. S. Stapley Co. v. Logan, 6 Ariz.App. 269, 431 P.2d 910; and see Farrington v. Granite State Fire Ins. Co. et al., 120 Utah 109, 232 P.2d 754.

made known to the plaintiffs. I think it is quite impractical and unreasonable to impose upon a customer the duty of inquiry as to the nature and extent of any specific limitations an insurance company may have placed upon an agent with whom he does business.[6]

To avoid repetition, I refer to my views on the importance of paying more than lip service to what we keep referring to as "the *right* of trial by jury" as set forth in my dissenting opinions in Roylance v. Davies, 18 Utah 2d 395, 424 P.2d 142; Memmott v. United States Fuel Co., 22 Utah 2d 356, 453 P.2d 155; and DeMille v. Erickson, 23 Utah 2d 278, 462 P.2d 159, and authorities cited therein, including the statement of Justice Murphy in Jacob v. City of New York, 315 U.S. 752, 62 S.Ct. 854, 86 L.Ed. 1166, about the right of trial by jury being, " * * * fundamental and sacred to the citizen * * * [and which] * * * should be jealously guarded by the courts."

This reversal deprives the plaintiffs of a verdict obtained in the procedure prescribed by law and through the expenditure of the time, trouble and expense of a jury trial where each side had a fair opportunity to win. It is my opinion that this decision unfairly and improperly takes from them what in morality and justice they are entitled to. I would sustain the jury verdict and affirm the judgment of the trial court thereon.[7]

---

6. A field representative of a benefit society has been held to be the agent of the general society in spite of a provision in the by-laws that he would be considered the agent of the individual members, Knights of the Maccabees of the World v. Johnson, 79 Okl. 77, 185 P. 82.

7. See statement in Hales v. Peterson, 11 Utah 2d 411, 360 P.2d 822, affirming verdict for defendant; and in Robinson v. Hreinson, 17 Utah 2d 261, 409 P.2d 121, affirming verdict for plaintiff.